85 N.J. Super. 478 (1964)
205 A.2d 316
GLORIA JEAN KRIDEL, PLAINTIFF-RESPONDENT,
v.
MYRON M. KRIDEL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1964.
Decided December 2, 1964.
*480 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Israel B. Greene argued the cause for appellant (Messrs. Greene & Orloff, attorneys; Mr. Laurence B. Orloff, on the brief).
Mr. Leslie H. Cohen filed a brief on behalf of respondent, now deceased.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Pursuant to leave granted, defendant appeals from a Chancery Division order which granted plaintiff separate maintenance pendente lite and counsel fees and costs, provided for divided custody of the two children of the marriage, and denied various applications made by defendant and described hereinafter. We stayed the order pending appeal.

I.
On May 20, 1963 plaintiff filed a verified complaint in three counts, the first two seeking separate maintenance on the grounds of constructive abandonment (cruelty) and consensual *481 separation, and the third seeking an accounting of certain bank accounts, securities and other assets. Plaintiff also demanded judgment awarding her custody of the two children, Michael, then 11 years old, and Robert, then 9. The parties and their sons all resided in the marital home in South Orange, and continued to do so during the proceedings which followed. The complaint was accompanied by a notice of motion seeking support, custody, counsel fees and costs pendente lite. Defendant answered, denying all the material allegations of the first two counts, and he also counter-claimed for the return of certain silverware which he claimed plaintiff had unlawfully removed from the house.
Thereafter, plaintiff's deposition was taken on November 4, at which time she was questioned extensively regarding the allegations contained in her verified complaint and supplementary affidavits. This discovery furnished the basis for defendant's subsequent motion to dismiss the complaint on the ground of unclean hands.
On November 6, 1963 the trial judge dictated his conclusions in open court, counsel (we are told) not then being present. He said, "I think the wife is entitled at this stage to separate maintenance, but in the interests of the children I will allow this separate maintenance only in the household in which the husband and wife are now living." He granted custody of the younger boy to the father, who could, if he wished, have the child taken care of by the mother or by his relatives. Custody of the older boy was awarded the mother, that custody to be "in the present family residence." The trial judge said there was little question but that plaintiff drank to excess; however, there was not sufficient before the court to prevent the division of custody. He further stated that defendant was to pay all expenses of the household. These are detailed in the order later entered and need not be repeated here. Finally, the judge referred counsel to the report of the probation officer dated October 30, 1963. This was the first notice counsel had of the fact that the court had directed that a report be prepared, or that it had been filed.
*482 Based on the discovery of plaintiff's alleged "unclean hands" and on claimed errors and irregularities in the trial judge's oral opinion, defendant filed an omnibus motion seeking the following relief:
(a) To dismiss the complaint for unclean hands, or, at the least, permit the testimony in open court of two witnesses who would refute plaintiff's testimony and affidavits;
(b) Alternatively, and in connection with plaintiff's pendente lite application, to have the trial judge state on the record his conversations with the children, the school principal and the probation officer; to have the probation report expunged, or for leave to examine the probation officer in open court on his report and to rebut his testimony; and, further, for leave to examine the children, principal and probation officer in open court regarding their conversations with the trial judge;
(c) To have the court's oral opinion awarding plaintiff relief pendente lite set aside because based upon erroneously considered evidence and upon plaintiff's false affidavits; and
(d) As a lesser alternative to (c), to have the trial judge reconsider his oral opinion awarding pendente lite relief.
The motion was accompanied by a number of affidavits. One of these, by Laurence B. Orloff of the firm of Greene & Orloff, representing defendant, quoted and juxtaposed excerpts from plaintiff's depositions (not previously a part of the evidential record before the court), affidavits on file, and testimony given in a prior police court hearing. Another affidavit was that of Israel B. Greene, of the same firm, stating that after he learned of the probation report, he phoned the probation officer to inquire as to the source of the statements contained therein. The officer informed him that the report was based solely upon what the children had told him on the way from the school to the trial judge's chambers, and that he had not talked to anyone else, made no other investigation, and had not visited the home of the parties. The affidavit goes on to say that the officer had informed the attorney that he had given the trial judge an oral report when he brought the children to chambers, and had not submitted his formal report until October 30, 1963.
*483 After a further exchange of affidavits, defendant's motion came on for hearing on December 20, 1963. The trial judge reserved decision and later, on January 30, 1964, filed a letter opinion in which he denied most of defendant's omnibus motion. Commenting on the Orloff affidavit, the judge said that it was actually a brief and could be treated as such despite the jurat; he would not construe it as pertaining to the substance of the case. However, the Greene affidavit would have to be considered as dealing with a matter of substance which might well require the attorney to take the stand at the trial. Because of this, said the judge, his law firm "must withdraw from the case."
A motion to settle the form of order was argued March 23, 1964. Counsel for plaintiff requested a $1,000 fee pendente lite, stating that he had received a total of $200 from his client or any other source. During the course of the hearing the trial judge stated he wanted it clearly understood that he did not waive what he had said regarding the Greene affidavit. In his view, Mr. Greene had no right to be heard as counsel; he considered what Mr. Greene had done as a violation of the Canons of Professional Ethics.
The order under review was entered the next day, March 24. In summary, it provided that plaintiff was entitled to separate maintenance, but "only in the household in which plaintiff and defendant are presently living." Defendant was to pay all household expenses, including taxes, mortgage amortization and interest, car maintenance and gasoline, food bills and all charge accounts for necessary clothes for plaintiff and the children. Defendant was also to pay plaintiff $15 a week for spending money. Plaintiff was granted custody of Michael "in the present family residence," and defendant was granted custody of Robert, the younger boy, "to be taken care of by the mother or by the defendant's relatives as the defendant wishes." Defendant was to pay plaintiff's attorney costs to be taxed, including a $750 counsel fee, the filing fee, sheriff's fee and $60 hearing fee. The order went on to deny practically all of defendant's omnibus motion.

*484 II.
Plaintiff died on July 14, 1964. Her cause of action died with her. Accordingly, her attorney, who had filed an answering brief after her death, was directed not to argue the matter orally.
Defendant had filed a comprehensive brief in support of his initial motion for leave to appeal. Prior to plaintiff's death he also filed a supplemental brief, as permitted by our order granting leave to appeal. These two briefs advance 18 grounds for reversing the challenged order of March 24, 1964. Defendant attacks the procedures followed by the court in awarding temporary custody  the discussions with the children, the conversations with the school principal and probation officer, and the probation report filed without counsel's knowledge  as well as the divided custody award itself. He also challenges the provisions of the order relating to support as being contrary to the accepted practice, and the award of any separate maintenance whatever in the circumstances. He claims error in the court's refusal to dismiss the complaint on the ground of unclean hands or, in the alternative, to permit defendant to present testimony in open court on that issue. Error is also claimed in awarding a counsel fee pendente lite and in ordering defense counsel to withdraw from the case.
All arguments directed to the custody question and the award of separate maintenance to the wife have been laid to rest by her death. Defense counsel, in a reply brief filed after her demise, urges that we consider these points for the guidance of the matrimonial bench and bar in dealing with pendente lite applications.
Although we consider those matters moot, we are obliged to note our disapproval, for example, of a divided custody arrangement where the parents and children all reside under one roof, there being no tension or friction between the father and the child given into the custody of the mother. We consider the trial judge's discussions with the boys as having unwittingly exceeded the bounds of what is permitted under *485 Callen v. Gill, 7 N.J. 312, 319 (1951). See also Boerger v. Boerger, 26 N.J. Super. 90, 103 (Ch. Div. 1953), as to dangers attendant upon such discussions. The judge's telephone conversation with the school principal, brief though it was, and his conversation with the probation officer, carried the potential of possible influence however much he might resist giving consideration to what was said. Further, the probation officer's written report, even though prepared in a space of 12 days and serving a pendente lite purpose only, did not follow the specifications of R.R. 4:98-8(a), which deals with a probation investigation before final judgment or order. It was based solely on what the children had told him, without further investigation. Finally, we find no support in the record for the statement in the judge's oral conclusions that were he to award custody of the older boy to the father, "I would be faced with the probable suicide of this child"  a conclusion he drew after seeing the boy once and from the school principal's remark that he had "not seen this boy smile this year." We doubt whether the principal of a school of several hundred children kept constant watch over the boy.

III.
We deal with the question of the counsel fee pendente lite. There is no challenge addressed to its amount. Indeed, the record itself indicates the effort and time which counsel had to expend in his client's cause before her decease. The claim, rather, is that counsel, in applying for the pendente lite fee, failed to state how much he had received and what provision had been made for payment in the future, as required by R.R. 4:98-4(c). The application, it is argued, should have been made formally and supported by affidavit.
The rule does not require an affidavit. It does call for a statement, and such statement should preferably be part of the written application. However, the matter of counsel fee was gone into at the time of the settling of the form of the order. The trial judge inquired of plaintiff's attorney how *486 much he had received from his client or any other source, and the answer was $200. Defendant made no objection as to what provision had been made for the payment of fee in the future, and no claim is presently made that the attorney received any monies other than the $200. Accordingly, we will not disturb the award of counsel fees and costs.

IV.
Defendant's final contention is that the trial judge erred in ordering his counsel to withdraw from the case. His letter opinion of January 30, 1964 so directed, and when the attorneys subsequently appeared to settle the form of the order, he confirmed what he had said.
The order under review does not in express words direct that counsel withdraw. The answering brief suggests that the matter is therefore not properly before the court, since appeals are taken from judgments and not from opinions. However, the brief then goes on to argue the propriety of the trial court's action.
Although the order, as stated, does not in specific language direct defense counsel to withdraw, the trial judge, before signing the order submitted to him, inserted in the introductory part of the order and after the reference to his oral opinion of November 6, 1963 and the letter opinion of January 30, 1964, the words, "both of which are incorporated herein by reference."
We consider the matter of sufficient importance to deal with it.
The Greene affidavit, which led to the directive that defendant's attorneys withdraw from the case, came about in this fashion:
Mr. Greene learned of the probation report, filed with the court on October 30, only after the trial judge had rendered his oral opinion on November 6. Surprised and troubled by its contents, and the fact that the judge might have relied upon it, he sought to verify the sources of the statements made *487 therein  and this in preparation for a motion he intended to address to it. He thereupon phoned the probation officer who made the report. Mr. Greene then filed a short affidavit in support of a motion for leave to examine the officer in open court, in connection with a review of the decision on the pendente lite application. That affidavit made two brief points, based entirely on the telephone call: it appeared the officer would testify that (1) his report was based entirely on what the children told him, and (2) he had reported orally to the trial judge in chambers on October 18, 1963, the day the application for pendente lite relief was heard.
The trial judge, as noted above, considered the affidavit "a matter of substance in the cause." Counsel, he said, might well have to take the stand at the trial, and since this was foreseeable when the affidavit was filed, Mr. Greene and his law firm must withdraw.
Defendant's right to retain his present attorneys is at stake. He is entirely satisfied with their representation and has informed the court that he wants them to continue. The only purpose of the affidavit was, however briefly, to lay a foundation for obtaining leave to examine the probation officer in open court. We do not consider its contents a matter of substance, bearing in a testimonial way upon the merits of the controversy. Indeed, as counsel points out, there is nothing in the affidavit not presently a matter of undisputed record in the case.
Counsel has represented, as he did in the court below, that he neither had, nor does he have, any intention of being a witness in the case. But even were we to consider the affidavit as carrying the potential of counsel eventually being a witness, we conclude that the trial judge was without authority to order his withdrawal. In Callen v. Gill, 7 N.J. 312 (1951), appellant claimed it was error for the trial court to permit an attorney of record to testify to the merits of a Chancery matter. Our Supreme Court observed that the practice of an attorney for a party taking the stand and testifying in behalf of his client on the merits of the case had been severely condemned *488 by our former Court of Chancery. Reference was made to the Canons of Professional Ethics, section 19, made applicable to the conduct of members of the bar of this State by R.R. 1:25. Notwithstanding this, the Callen court found no instance where the testimony of a lawyer so offending was actually rejected (at pages 316-318).
At the time the trial judge directed him to withdraw, Mr. Greene had not yet offered himself as a witness and, by his solemn representation, had no intention of doing so. The situation would, of course, be different had the matter been scheduled for trial and Mr. Greene decided he would testify as to the merits. It would then have comported with ethical practice for him to withdraw before becoming a witness. Cf. White v. State Board of Tax Appeals, 123 N.J.L. 350, 354-355 (Sup. Ct. 1939).
The question of an attorney-as-witness is an ethical issue. Absent a specific provision in the rules, it was not within the power of the trial judge, at the particular time and in the circumstances then present, to order (even orally) counsel's withdrawal from the case. We do not consider that a client should be deprived of representation in the midst of a proceeding because his attorney, arguably, had stepped just over the ethical line. The affidavit which drew the trial judge's criticism did not clearly represent such a trespass.

V.
The question of the custody of Michael, now 12 years old, requires resolution.
When Michael's mother died, the maternal grandparents took him from his South Orange home to their apartment in East Orange. Defendant's repeated attempts to get him back were unsuccessful. What had happened in the meantime was that the grandparents had moved to Florida and taken Michael with them. When defendant learned that the grandmother was back in East Orange on a short visit to clear out the apartment, he at once instituted habeas corpus proceedings *489 for the return of the boy. Personal service of the writ could not be effected because, although present in her apartment, the grandmother refused to answer the door. Service was therefore made pursuant to N.J.S. 2A:67-19. The grandmother failed to appear in court on the return day.
The record indicates that the grandparents played a not insignificant part in the marital life of the parties. It appears they were not entirely happy with the marriage; they sided with the daughter and influenced the boys, particularly Michael. One of the differences between the parties was the fact that plaintiff would take the money she received from defendant and give part of it to her parents.
The order under review specifically provided that plaintiff have custody of Michael, but only "in the present family residence." The grandparents' removal of Michael from his home and then taking him to Florida was completely without warrant. They asked no permission of the father nor of the court. What they did was in flagrant violation of our stay order and the law. The policy of our law is generally against taking a child of tender years out of the State where the father continues to reside here and is a suitable person who should have custody of the child for his best welfare. See N.J.S.A. 9:2-4 and 9:2-2; 11 N.J. Practice (Herr-Lodge, Marriage, Divorce and Separation) (3d ed. 1963), § 872, p. 185.
The mother having died, the father, as natural parent, at once had the right to Michael's custody. There is nothing in the record which indicates that the boy does not like his father; indeed, the two get along well together. With the passing of the mother, Michael is not put to the difficult choice of preferring one parent to the other. He belongs with his father and brother, back in the South Orange home where he will again enjoy the company of his young friends, attend his regular school, and he brought up in his own religion.
We see no need for further testimony. The record is entirely clear that as between the father and the maternal grandparents it is the father who should have the custody of *490 Michael. As was said in Starr v. Gorman, 136 N.J. Eq. 105, 108 (E. & A. 1945), "Grandparents are not entitled to the custody of an infant as against the natural father, who has shown no intent to abandon his offspring and who, from his past conduct, may be expected to bring up the child in accordance with his means and station in life."
What the grandparents have done is clearly unlawful. Unless they voluntarily return Michael, the father will have to pursue his right to custody in the courts of Florida or in whatever state the grandparents may have him.
Accordingly, this matter is remanded to the Chancery Division with the direction that an order be entered vacating the order under review, awarding custody of Michael and Robert to defendant, and allowing plaintiff's attorney the same counsel fee and costs as originally granted. There will be no further fee allowed him for such work as he may have done in connection with this appeal prior to the death of his client.