164 N.J. Super. 492 (1978)
397 A.2d 349
JOSEPH PALERMO, PLAINTIFF-APPELLANT,
v.
CYNTHIA PALERMO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1978.
Decided December 14, 1978.
*493 Before Judges LYNCH, CRANE and HORN.
Mr. Howard Z. Kanowitz argued for appellant.
There was no argument or brief filed on behalf of respondent.
The opinion of the court was delivered by HORN, J.A.D.
In this case plaintiff, the natural father of a 12-year-old girl, appeals from a judgment awarding custody of the child to defendant stepmother.
The following facts are uncontroverted. Angelina Palermo, the child, was born March 16, 1966 to plaintiff and his then wife, Laurel Ann Palermo. On October 7, 1969 Laurel Ann died while still married to but separated from plaintiff. The child had been in her natural mother's custody *494 at all times until the latter's death. After the demise of Laurel Ann plaintiff decided to permit Angelina to remain with her maternal grandparents, with whom she and her mother had lived after the separation.
Angelina remained with her maternal grandparents for about two years, during which time plaintiff sent her toys and clothing and often visited her on weekends. Following the marriage of plaintiff to defendant Cynthia Palermo (now Cynthia Wetherall) on October 30, 1971, the child moved back with her father and his new wife. On January 21, 1973 the parties separated and plaintiff moved in with his parents for about six months and then moved to another address where he worked. In October 1974 he took up residence in an apartment in Glassboro. In the meantime Angelina continued to reside with defendant. As indicated, defendant has since remarried and Angelina resides with defendant and her husband.
The child has always done well at school and seems to enjoy her teachers. She appears to be well adjusted and professes equal love for her father and her stepmother. However, at an in camera interview with the trial judge she expressed her preference to live with her stepmother and to visit her father on weekends.
The trial judge found that both parties were "emotionally fit" to raise Angelina. Each was able to furnish a satisfactory dwelling unit for the child. Each was able to provide for her economic well-being. Nonetheless, he granted custody to defendant because he determined that such custody was in the best interests of the child because of
* * * the importance of a stable relationship in maintaining continuity of a family life for Angelina, that with the plaintiff she will be raised by a single parent and with the defendant she has the benefit of both a male and a female parental figure with whom she has identified and with whom she has established a family unit. The living conditions with the defendant, that she has lived with the defendant for a longer continuous period of time than with the plaintiff or any other person. That with the defendant she is doing well in school, her health is good, she is *495 well-fed and well-clothed. And while living with the defendant, she nevertheless continues to have satisfactory visitation with the plaintiff. And I have also considered the desire of Angelina to remain where she is with the defendant. I can not find a benefit to Angelina to transfer custody to the plaintiff. I do, however, find that it is in the best interests of Angelina to remain where she is and for the reasons that I have expressed. Visitation shall continue as heretofore.
Plaintiff asserts that the trial judge erred in applying an incorrect legal standard in his determination  awarding custody to defendant, who has no blood ties with the child, as against plaintiff, her natural father  in view of the aforementioned findings that plaintiff was a fit person and was otherwise capable, emotionally and economically, to enjoy custody.
Plaintiff particularly asserts that
There is a rebuttable presumption favoring custody in the natural parent vs a stranger: and the only rebuttal is a finding that the custody in the natural parent will create a danger to the health, safety, morals, or welfare of the child.
In addition, he avers that the opinions expressed to the judge privately by Angelina are not controlling, since the child was under 12 years of age.
We need not determine whether there is such a rebuttable presumption favoring the natural parent in this case, although the language of Richards v. Collins, 45 N.J. Eq. 283 (E. & A. 1889), suggests its existence:
Doubtless it is the strict legal right of parents and those standing in loco parentis to have the custody of their infant children as against strangers. This right will control the judgment of the court, unless circumstances of weight and importance, connected with the welfare of the child, exist to overbear such strict legal right. [at 286-287]
But the court in that case also said:
The court will not regard the parental right as controlling, when to do so would imperil the personal safety, morals, health, or happiness *496 of the child. In determining this delicate and often difficult judgment, the court looks at the character, condition, habits, and other surroundings of claimants.
In resolving the general question of what will best subserve the interest and happiness of the child, its own wish and choice may be consulted and given weight, if it be of an age and capacity to form a rational judgment. There is no fixed age which capacitates such choice. It depends upon the extent of its mental development. Commonwealth v. Hammond, 10 Pick. 274; Matter of McDowle, 8 Johns. 253; People v. Chegaray, 18 Wend. 637.

The wishes of children of sufficient capacity to form them are given especial consideration, where the parents have for a length of time voluntarily allowed their children to live in the family of others, and thus form home associations and ties of affection for those having their care and nurture, and when it would mar the happiness of the children to sever such ties.
The relation of parent and child is regarded as not fully characterized by the relative duties of service and support. Nature's provision of mutual affection commonly exists as the incentive to parental and filial duty and the bond of family union. It is the instinct of childhood to attach itself and cling to those who perform toward it the parental office, and they become endeared to it by ministering to its dependence. A parent, by transplanting his offspring into another family, and surrendering all care of it for so long a time that its interest and affections all attach to the adopted home, may thereby seriously impair his right to have back its custody by judicial decree. In a controversy over its possession, its welfare will be the paramount consideration in controlling the discretion of the court. The strict right of the parent will be passed by, if a judgment in observance of such right would substitute a worse for a better custodian. [at 287-288]
After weighing the facts the court decided that the child should remain with its foster parents as against its natural parents because, among other findings, the natural parents, "either through inability to give it a home or through indifference, have withdrawn themselves from it and allowed it to become rooted in its foster home. The true interest of Clara [the child, 12 years and 8 months old], under present circumstances, requires, in my judgment, that she remain in the appellant's family." 45 N.J. Eq. at 288-289.
In Giffin v. Gascoigne, 60 N.J. Eq. 256 (Ch. 1900), the court stated:

*497 The true view, * * *, in that the custody of the child should remain with his parents, irrespective of greater benefits which the custody of another might secure for him, unless the character of the parents and the environment to which the child would, in their charge, be subjected is such as actually to endanger his life, health, morals or permanent happiness. [at 260]
But a careful reading of this case demonstrates that that broad philosophic view was bolstered by substantial practical underpinnings. The judge found that there was "the warmest affection and confidence between the father and son." The testimony of the other custody claimant was "not given with candor" and, contrary to his testimony, the judge found that "the most energetic steps were taken to keep the boy from the father." Thus the Giffin court did not rest its analysis solely on the possible unfitness of the biologic father, but rather considered all the surrounding circumstances in rendering its custody decision.
More recent cases are consistent in not hesitating to award custody to someone other than a natural parent when the best interests of the child so dictate, even in one case where the natural mother was no longer found to be unfit. N.J. Div. of Youth & Family Serv. v. V., 154 N.J. Super. 531 (Cty. Ct. 1977). See In re Adoption of B. by E. and R., 152 N.J. Super. 546 (Cty. Ct. 1977) (grandparents given preference over child's unwed father); N.J. Div. of Youth & Family Serv. v. Huggins, 148 N.J. Super. 86 (Cty. Ct. 1977), aff'd o.b. 160 N.J. Super. 159 (App. Div. 1978) (protective custody given to the Division of Youth and Family Services where natural parents found unfit).
The modern view of the factors to be considered in determining custody was given cogent expression in S.M. v. S.J., 143 N.J. Super. 379 (Ch. Div. 1976). The court in that case recognized the policy that "[c]ourts have traditionally been reluctant to deny a parent custody of his or her child. They should remain so." At 385. However, the court's analysis did not stop there:

*498 * * * But, when the best interests of the child will be clearly served by custody in someone other than the parent, a finding of abandonment by the parent, or parental unfitness, is not a prerequisite to a custody order. [at 385]
In S.M. v. S.J. the court dealt with the fact that the husband was not the putative father of one of the three children involved in the custody proceeding. However, it determined that the father should retain custody of all three children despite the fact that the natural mother protested in a divorce action that she should be granted custody. The court said:
In determining the issue for custody, the court has given weight to the following factors: the importance of keeping the three children together as a family unit; the living accommodations; the work record and stability of the husband compared to that of the wife; the fact that the children have been with the husband for the last two years; and the desire of the chlidren to remain with him. [at 385]
In considering all the circumstances upon which the child's best interests hinge, a trial court judge has the opportunity to become fully immersed in the details of the case, and his opinion will be given great weight on appeal. The Appellate Division said in In re Flasch, 51 N.J. Super. 1 (1958), certif. den. 28 N.J. 35 (1958):
The trial judge had the advantage of the personal appearance of the parties and of discussions with the children; additionally he had the wisdom which comes from an accretion of experience in dealing with such matters. Particularly in a case of this nature, is it true that general principles of law do not decide concrete cases, as has been aptly said. Each matter must be decided on its own merits, with the best interests and welfare of the children as the paramount consideration. To this principle, even parental rights must yield. [at 18]
For a similar view of the great weight to be given to trial court observations in custody and divorce proceedings see Sheehan v. Sheehan, 51 N.J. Super. 276, 295 (App. Div. *499 1958), certif. den. 28 N.J. 147 (1958); Scanlon v. Scanlon, 29 N.J. Super. 317, 324 (App. Div. 1954).
We agree with plaintiff that the "opinions" or expressed preference of the child to live with defendant was not controlling. But it is one of the factors which may properly influence the trial judge's decision. Callen v. Gill, 7 N.J. 312, 319 (1951). The trial judge in the case at bar did not profess to have employed the child's preference as anything more than another element which produced his decision. We are satisfied that whatever favorable presumption may have been raised in favor of plaintiff was considered by the trial court. It did not either apply an incorrect legal standard or fail to consider the natural relationship of the child and plaintiff. For these reasons the challenged judgment is
Affirmed.