669 S.W.2d 240 (1984)
In re B.R.F., A Minor.
No. 46519.
Missouri Court of Appeals, Eastern District, Division One.
March 20, 1984.
*242 Love, Lacks, McMahon & Paule by Daniel P. Card II, St. Louis, for petitioner, B.S.G.
Iris Golliday Ferguson, St. Louis, for respondent, F.F.
SATZ, Judge.
This is an original proceeding in habeas corpus initiated by B.S.G., the maternal grandmother of B.R.F., a minor. The grandmother contends she was awarded the legal custody of B.R.F. by an order of the Juvenile and Domestic Relations Court, Burlington County, New Jersey (New Jersey Court).[1] She also contends the natural father of B.R.F. is violating her right to custody by having taken physical custody of B.R.F. and refusing to return B.R.F. to her. We issued the writ, and, for the reasons which follow, we find the writ lies and order the father, F.F., to return the physical custody of B.R.F. to the grandmother, B.S.G., under and pursuant to the order of temporary custody of the New Jersey Court.
Certain facts are not in dispute. B.R.F. is one of two children born to F.F., the father, during his marriage to B.J.F., the mother. The marriage was dissolved by a decree of the Circuit Court, City of St. Louis, in December, 1976. Custody of B.R.F. and her brother was awarded to their mother.[2] At the time of the divorce decree, the mother was living in New Jersey. She continued to live there with her children until her death on January 11, 1982.
After the death of the mother, the maternal grandmother cared for the children at their home in New Jersey. In February, 1982, the grandmother filed a "complaint" in the New Jersey Court requesting an order of temporary custody of the children. On March 23, 1982, an evidentiary hearing was held. The father appeared in person and by his attorney. The New Jersey Court entered an order awarding temporary custody of the children to their grandmother subject to the father's right to reasonable visitation.[3]
On August 18, 1982, the father sought modification of the original divorce decree by filing a motion for an "Ex Parte Order of Custody" in the Circuit Court, City of St. Louis (Missouri Court). Suggesting the death of the mother as a change of circumstance, the father requested the Court "to vacate and set aside" its previous order awarding custody of the children to their mother and, ex parte, to grant him custody of the children. On the same day, the Missouri Court entered its order granting custody of the children to the father. Subsequently, the father traveled to New Jersey and returned to Missouri with his daughter, B.R.F.
On August 30, 1982, the New Jersey Court held another hearing concerning the custody of B.R.F. The father did not appear but was represented by counsel. The Missouri Court's order of custody was admitted into evidence.[4] In an unsigned *243 memo, dated the same day as the hearing, the New Jersey Court's previous order was "ordered" to remain in full force and effect and the father was "ordered" to return B.R.F. to the Court within 10 days. Subsequently, and, as far as the record shows, without further hearing, an order, signed by the judge of the New Jersey Court, awarded "custody of the children" to the grandmother, suspended the father's visitation rights and ordered the father to return B.R.F. to the grandmother. The father failed to comply with this order, and the grandmother then petitioned this Court for a writ of habeas corpus.[5]
On these basic facts, the grandmother contends the New Jersey Court had jurisdiction to issue its custody awards and that, under the Uniform Child Custody Jurisdiction Act (UCCJA) adopted by both Missouri (Missouri Act) and New Jersey (New Jersey Act),[6] the orders of the New Jersey Court, in particular, the last order of that Court, must be recognized and enforced by Missouri courts. In face of a valid and enforceable award of custody to her, the grandmother reasons, the father's retention of the custody of B.R.F. is unlawful.
The father counters that the Missouri Court properly assumed jurisdiction over B.R.F. at the time of the original divorce decree and that this jurisdiction continued and was in effect at the time the grandmother petitioned the New Jersey Court; therefore, he reasons, the New Jersey Court lacked jurisdiction to determine the custody of B.R.F. Moreover, the father argues, the order of the Missouri Court, dated August 18, 1982, awarding custody of B.R.F. to him, was a valid order, pursuant to which he rightfully brought B.R.F. back to live with him in Missouri.
We resolve the custody issue here under the UCCJA.[7] The purpose of the UCCJA is to limit, as much as possible, the jurisdiction or exercise of jurisdiction over the custody of a child, at any one time, to the court of only one state and, thus, avoid jurisdictional competition and conflict between the courts of different states. UCCJA § 1, 9 ULA 116-117 (Master ed. 1979). Thus, under the UCCJA, the courts of one state must recognize and enforce the custody decree of a court of another state as long as the latter court assumed jurisdiction under statutory provisions substantially in accordance with the UCCJA or under factual circumstances which meet the jurisdictional standards of the UCCJA. UCCJA § 13. However, the courts of one state are not permitted to modify a custody decree issued by a court of another state unless the latter court no longer has jurisdiction or declines to exercise its jurisdiction to modify the decree. UCCJA § 14.
*244 The Missouri Act and the New Jersey Act track these sections of the UCCJA. §§ 452.500; 452.505 RSMo; §§ 2A:34-41; 2A:34-42 N.J.Stat.Ann. Therefore, it is clear that if the Missouri Court had continuing jurisdiction over the custody of B.R.F. pursuant to the divorce decree, the New Jersey Court's assumption of jurisdiction was invalid. We find, however, that the Missouri Court did not have continuing jurisdiction.
Prior to our present dissolution act, a Missouri court was said to derive its jurisdiction over a divorce proceeding from the divorce action itself, e.g., Schumacher v. Schumacher, 223 S.W.2d 841, 845 (Mo. App.1949), and the divorce action was considered to be "personal to the two spouses" Id. at 845. An award of custody made in conjunction with a divorce decree simply determined that, as between the two spouses, the spouse chosen as custodian for a child was more suitable to care for that child. E.g., State ex rel. Walker v. Crouse, 240 Mo.App. 389, 205 S.W.2d 749, 750 (1947). Upon the death of either spouse, the divorce action abated Schumacher v. Schumacher, supra at 845 and, since the court derived its jurisdiction from the divorce action, its jurisdiction to modify the original divorce decree abated. Id. at 845. Our present Dissolution Act has not changed these principles and their corollaries. See Tomlinson v. O'Briant, 634 S.W.2d 546, 548 (Mo.App.1982); See Leventhal v. Leventhal, 629 S.W.2d 505, 507 (Mo.App.1981). Accordingly, in the present case, the Missouri Court's jurisdiction, derived from the divorce action, abated upon the death of B.J.F., the natural mother,[8] leaving the New Jersey Court free to exercise its jurisdiction over the custody of B.R.F., if it could otherwise meet the requirements of the New Jersey Act.
Since New Jersey has adopted the UCCJA, (the New Jersey Act), we must recognize and enforce the New Jersey Court's order of custody, its exercise of jurisdiction, if the New Jersey Court assumed jurisdiction under statutory standards substantially in accordance with those of the Missouri Act. § 452.500 RSMo (UCCJA § 13). The degree of latitude allowed by § 452.500 RSMo (UCCJA § 13) depends upon the interpretation of the statute's substantial conformity phrase, an issue that courts have not critically examined. Coombs, Interstate Child Custody: Jurisdiction, Recognition, and Enforcement, 66 Minn.L.R. 711, 726-734 (1982). Two immediate problems are created by this phrase. First, § 452.500 RSMo (UCCJA § 13) does not explicitly indicate whether the New Jersey Act or the Missouri Act should be used to test the propriety of the New Jersey Court's assumption of jurisdiction. The two Acts are, however, so similar that the results under each would be the same. For our purposes here, we use the New Jersey Act and cite the corresponding sections of the Missouri Act.[9] Second, § 452.500 RSMo (UCCJA § 13) *245 does not explicitly indicate which provisions of the New Jersey Act the New Jersey Court must have complied with in order to receive the respect mandated by § 452.500 RSMo. (UCCJA § 13). No extended discussion is needed here on this issue, however, for the parties focus their arguments on three mandatory provisions of the Acts: § 2A:34-31 N.J.Stat.Ann.; § 452.450 RSMo; (UCCJA § 3), setting the criteria for jurisdiction; and §§ 2A:34-32 and 2A:34-33 N.J.Stat.Ann.; §§ 452.455(2) and 452.460 RSMo (Supp.1983) (UCCJA §§ 4 and 5), setting the requirements of notice and opportunity to be heard.[10]
The New Jersey Act contains four prerequisites for jurisdiction. § 2A:34-31, N.J.Stat.Ann.; 452.450 RSMo (UCCJA § 3).[11] These prerequisites are alternative, and, if any of the four are met, the New Jersey Court had jurisdiction.
The father contends the New Jersey Court did not have jurisdiction under any provision of the New Jersey Act. The grandmother responds that New Jersey was the "home state" of B.R.F. and, thus, the New Jersey Court had jurisdiction under the first prerequisite of the New Jersey Act. Although we agree with the grandmother that the New Jersey Court had jurisdiction, we do not agree that New Jersey was the "home state" of B.R.F.
"Home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months...." § 2A:34-30(e) N.J.Stat.Ann.; § 452.445(4) RSMo (Supp.1983) (UCCJA § 2(5)). "Person acting as parent" is defined as "a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody." § 2A:34-30(i) N.J.Stat. Ann. (UCCJA § 2(9)).[12]
*246 The jurisdictional facts before the New Jersey Court facially support this contention. B.R.F. had lived with her mother in New Jersey at least since the time of the divorce until the mother's death.[13] From the death of the mother until the filing of the petition for custody, an approximate three-week period,[14] the grandmother provided care for B.R.F. and, thus, the grandmother was a "person acting as a parent." § 2A:34-30(i) N.J.Stat.Ann. (UCCJA § 2(9)).
However, a question remains: may the approximate one month period the grandmother cared for B.R.F. be tacked onto the preceeding five months the mother cared for B.R.F. to meet the "6 consecutive months" needed for "home state" jurisdiction? The UCCJA on its face provides no clear answer to this question. An analysis of the purposes of the UCCJA, however, does provide the answer, and, on the present record, that answer is: No.
The jurisdictional requirements of the UCCJA are designed to increase the probability that a custody decision will be in the best interests of the child by providing that custody be decided in the court with the greatest access to relevant information. E.g., Brokus v. Brokus, 420 N.E.2d 1242, 1247 (Ind.App.1981). "Although the child is the center of attention in a custody proceeding, the main inquiry is directed toward two or more adults and toward making a prediction for the future concerning the superior ability of one of them ..." to care for the child. Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflicts of Laws, 22 Vand.L.Rev. 1207, 1223 (1969). The critical need for valid information about the adults contesting for custody of the child is reflected in the definition of "home state", which requires that both the child and the parent or person acting as a parent have lived in that state for 6 consecutive months "immediately preceding the time involved." § 2A:34-30(e) N.J.Stat.Ann.; 452.445(4) RSMo (Supp.1983) (UCCJA § 2(5)). This requirement attempts to insure the availability of valid information not only about the child but about the adult and the environment the adult will provide for the child.
In the present case, B.R.F. was living in New Jersey for the required 6 month period. The grandmother, however, was in New Jersey only 3 weeks at the time she filed her petition. At the time of the initial hearing, her legal residence was in Indiana, and she had lived there for 10 years. Thus, the state which presents the best and, perhaps, only opportunity to investigate and validate the facts about the ability of the grandmother to care for B.R.F., would be Indiana, not New Jersey. If the "home state" requirement is to be meaningful, it must, at least, require the person seeking custody to have been in the state for 6 months or more so that relevant information about that person can be readily obtained and validated. This requirement would not be met if we allowed the 3 weeks the grandmother cared for B.R.F. in New Jersey to be tacked onto the time the mother cared for B.R.F. We, therefore, find New Jersey was not the "home state" and, thus, the New Jersey Court lacked *247 jurisdiction under the first prerequisite. § 2A:34-31(a)(1) N.J.Stat.Ann.; 452.450-1(1) RSMo (UCCJA § 3(a)(1)(i)).
The next alternative ground of jurisdiction allows the New Jersey Court to assume jurisdiction if (1) the child and a contestant have significant connection with the state and (2) there is substantial evidence "concerning the child's present and future care, protection, training and personal relationships" available in the state. § 2A:34-31(a)(2) N.J.Stat.Ann.; 452.450-1(2) RSMo (UCCJA § 3(a)(2)). The critical elements of this section are "significant connection" and "substantial evidence." E.g., Etter v. Etter, 43 Md.App. 395, 405 A.2d 760, 763 (1979). Under this section, jurisdiction is proper when there is "maximum rather than minimum contact with the state" and when there is "optimum access to relevant evidence about the child and family." Commissioners' Note, UCCJA § 3, 9 ULA 124 (Master ed. 1979); Brokus v. Brokus, supra at 1247. The section was intentionally phrased in general terms to cover a multitude of fact situations. Commissioners' Note, UCCJA § 3, 9 ULA 122-123 (Master ed. 1979) and a review of the case law does not uncover any specific factorial approach to determine what constitutes "significant contacts." See, e.g., L.F. v. G.W.F., 183 N.J.Super. 195, 443 A.2d 751, 756 (N.J.App.1982).
We find, however, that B.R.F. having lived in New Jersey for 6 years had significant contacts under any reasonable definition of the term. This is not the case with the grandmother who, on the record, was in New Jersey for only 3 weeks prior to the filing of her petition. Similarly, while we can assume there is substantial evidence concerning the needs of the child in New Jersey, the bulk of the evidence on the fitness of the grandmother to have custody is in Indiana and not in New Jersey. We, thus, conclude the grandmother's 3 week stay in New Jersey was not sufficient to meet this alternative ground for jurisdiction. See St. Clair v. Faulkner, 305 N.W.2d 441, 447 (Iowa 1981) (3 week stay of child with mother in Iowa was not "significant contacts").
The next alternative ground for jurisdiction requires the child be physically present in the state and be abandoned or require emergency protection because of mistreatment, abuse or neglect. § 2A:34-31(a)(3) N.J.Stat.Ann.; § 452.450-1(3) RSMo (UCCJA § 3(a)(3)). L.F. v. G.W.F., supra 443 A.2d at 756. This section is appropriate only where a court would assume jurisdiction under the doctrine of parens patriae because the child is without proper care, custody or support and, thus, needs immediate protection. See Commissioners' Note, UCCJA § 3, 9 ULA 122-123 (Master ed. 1979). This section is inapplicable to the present case. Upon the mother's death, the father's right to custody of B.R.F. was restored, Schumacher v. Schumacher, supra, 223 S.W.2d at 845, and the grandmother took physical custody of B.R.F. Thus, B.R.F. was neither abandoned nor neglected, as those terms are normally defined in legal jargon. See, e.g., C.S. v. Smith, 483 S.W.2d 790, 794 (Mo. App.1972).
Finding the New Jersey Court could not have properly assumed jurisdiction under these three alternative grounds of jurisdiction, we turn to the last available ground. § 2A:34-31(a)(4) N.J.Stat.Ann.; § 452.450-1(4) RSMo (UCCJA § 3(a)(4)). This section provides that the New Jersey Court could assume jurisdiction if the court of no other state could or would assume jurisdiction under any of the other three alternative grounds of jurisdiction.
In the present case, the only states, other than New Jersey, the parties had any contact with are Indiana and Missouri. Since the jurisdictional facts before the New Jersey Court show no connection between B.R.F. and Indiana, an Indiana court could not have assumed jurisdiction. Similarly, the record before the New Jersey Court showed no connection between B.R.F. and Missouri. The fact that Missouri may have been the marital home some 6 years previous or that the father continues to reside in Missouri is insufficient to establish jurisdiction *248 under § 2A:34-31(a)(2) N.J.Stat.Ann.; § 452.450-1(2) RSMo (UCCJA § 3(a)(2)). See St. Clair v. Faulkner, supra at 442, 447. Moreover, Missouri was not the home state of B.R.F. and B.R.F. was not present in Missouri at the time of the grandmother's "complaint" was filed. Thus, neither § 2A:34-31(a)(1) N.J.Stat.Ann.; § 452.450-1(1) RSMo (UCCJA § 3(a)(1)) nor § 2A:34-31(a)(3) N.J.Stat.Ann.; § 452.450-1(3) RSMo (UCCJA § 3(a)(3)) are applicable. Since no other state would have jurisdiction under the first three alternatives, we find New Jersey properly assumed jurisdiction under § 2A:34-31(a)(4) N.J.Stat.Ann.; § 452.450-1(4) RSMo (UCCJA § 3(a)(4)).
The father next complains that his "due process rights" were violated because he was neither given proper notice nor given an opportunity to be heard in the New Jersey proceeding. Although the father's complaint is couched in language directed at alleged violations of his procedural due process rights, in reality, he complains that he was not given proper notice and the opportunity to be heard as required by the New Jersey Act.[15] We disagree.
The New Jersey Act requires that, before a custody decree is rendered, any parent whose parental rights have not been previously terminated must be given reasonable notice and an opportunity to be heard. § 2A:34-32 N.J.Stat.Ann.[16] The Act also specifies the type of notice which must be given to out-of-state litigants. § 2A:34-33 N.J.Stat.Ann.; § 452.460 RSMo (Supp.1982) (UCCJA § 5). Formal notice, however, is not required where a party voluntarily submits to the jurisdiction of the court. § 2A:34-33(d) N.J.Stat.Ann.; § 452.460(3) RSMo (Supp.1982) (UCCJA § 5(d)).
The father argues he was not given proper notice of the New Jersey action and only learned of it through conversations with his children. Regardless of how the father learned of the New Jersey proceedings, he did, in fact, appear before that New Jersey Court in person and by counsel, without raising the issue of improper notice. His appearance, thus, waived any objection to lack of notice, and the court properly had jurisdiction over his person. § 2A:34-33(d) N.J.Stat.Ann.; § 452.460(3) RSMo (Supp.1982) (UCCJA § 5(d); see, e.g., Crouch v. Crouch, 641 S.W.2d 86, 90 (Mo. banc 1982).
The father's complaint that he was not given an opportunity to be heard apparently rests on the more specific complaint that he was not permitted to testify. Although the New Jersey Act and the Missouri Act, as well as the UCCJA itself, do not specify the explicit requirements of a proper opportunity to be heard, we assume the opportunity to be heard refers to the constitutional standards of reasonableness. A meaningful opportunity necessarily includes the right to confront and cross-examine opposing witnesses and to rebut their testimony with controverting evidence. *249 E.g., Mueller v. Ruddy, 617 S.W.2d 466, 475 (Mo.App.1981). There is nothing in the transcript of the hearing in New Jersey showing the father's counsel was precluded from properly participating in the hearing on behalf of the father. For example, the transcript does not show the father's counsel called the father as a witness and the call was rejected, or, that he proffered evidence which was rejected. On the contrary, the record does show the father's counsel did actively participate by cross-examining the grandmother. This complaint is without merit. See, e.g., Niederkorn v. Niederkorn, 616 S.W.2d 529, 537 (Mo.App.1981); B.W. v. F.E.W., 562 S.W.2d 137, 140 (Mo.App.1978).
Next, the father argues that the last order of the New Jersey Court cannot be enforced under the Missouri Act because it is a temporary order, as opposed to a permanent order. We disagree. The order is an order of temporary custody, but orders of temporary custody can be enforced under the Missouri Act.
It is clear that the grandmother's "complaint" sought nothing more than an order of temporary custody of B.R.F. Equally clear are the first three documents filed in the New Jersey Court after the hearing on March 23, 1982. Each of the documents explicitly refers to a grant of "temporary custody" by the Court to the grandmother. The fourth document, however, the last order of the Court, refers only to a grant of "custody" of the children to the grandmother. Because of the deletion of the term "temporary," it is not clear whether the Court, by its last order, intended to change the award from "temporary custody" to an award of "permanent custody." From our reading of the applicable New Jersey law, the New Jersey Court's jurisdiction is limited to the issuance of orders of temporary custody.[17] Thus, just as the father concludes, the award of custody to the grandmother was "temporary custody."
The Missouri Act, however, does not distinguish between temporary and permanent custody decrees, nor does the UCCJA. This failure is understandable. The underlying purposes of the UCCJA require that both temporary and permanent decrees be enforced. The UCCJA was designed to give stability to the life of a child by avoiding relitigation of custody determinations and the resulting shifts of the child from state to state. UCCJA § 1. Failure to enforce a temporary custody order would result in as much instability as failure to enforce a permanent order. Therefore, contrary to the father's complaint, orders of temporary custody are enforceable under the Missouri Act, § 452.500 RSMo (UCCJA § 13). Cf. William R.B. v. Cynthia B., 108 Misc.2d 920, 439 N.Y.S.2d 265, 267 (N.Y.Fam.Ct.1981); Slidell v. Valentine, 298 N.W.2d 599, 601 (Iowa 1980) (under UCCJA, custody decree includes order defining visitation rights).
Finally, the father contends we should not enforce the order of custody because it is punitive. We disagree. The order is a temporary order, and, because it is temporary in nature, we do not consider it punitive. At this stage of the New Jersey proceeding, we enforce the order.
Under § 452.500 RSMo of the Missouri Act, (UCCJA § 13) recognition and enforcement of a foreign custody decree is mandatory *250 if the appropriate provisions of the Act have been met. Neither the New Jersey Act, the Missouri Act nor the UCCJA itself explicitly provides an exemption for foreign decrees deemed punitive. However, there is authority that supports this exception despite the language of the UCCJA. E.g., Brooks v. Brooks, 20 Or. App. 43, 530 P.2d 547, 551 (1975); Holt v. District Court, 626 P.2d 1336, 1344 (Okl. 1981). These courts rely on a comment to the UCCJA by the Commissioners, UCCJA, Commissioners' Note, § 13, 9 ULA 151, 152 (Master ed. 1979), and also resort to the historical articulation of the equitable exception regarding punitive modification. See Ehrenzweig, Interstate Recognition of Custody Decrees, 51 Mich.L.Rev. 345, 370, 373-74 (1953). A foreign decree is considered to be "punitive only if it is clear that the court awarded or changed custody simply because it was insulted by one parent disregarding its authority." Settle v. Settle, 25 Or.App. 579, 550 P.2d 445, 447 (1976), rev'd on other grounds In Re Marriage of Settle, 276 Or. 759, 556 P.2d 962, 967 (1976). In effect, the dignity of the court takes precedence over the interest of the child. The child is punished in order to discipline the parent.
In the present case, after an evidentiary hearing, the New Jersey Court awarded temporary custody to the grandmother until further order of the Court. Subsequently, the father obtained an order from the Missouri Court granting him custody of B.R.F. Then, insofar as the record shows, without any evidence concerning the fitness of the father and without further evidentiary reason other than the order of the Missouri Court, the New Jersey Court entered its last order which suspended the father's visitation rights and apparently deleted the term "temporary" from its order of custody. If the deletion made this order a final award of permanent custody, we would find the order punitive and would be faced with the question of whether the Missouri Act requires enforcement of a punitive custody order.[18] However, as noted, the order of the New Jersey Court is simply an order of temporary custody, made after a hearing, procedurally proper on the issue of temporary custody. Being temporary, the custody of B.R.F. remains for final determination, and, thus, this temporary order is not punitive in the sense used in the enforcement cases under the UCCJA. See Holt v. District Court, supra at 1344. Therefore, we recognize and enforce this temporary order under § 452.500 RSMo (UCCJA § 13).
Before an award of permanent custody can be made, the fitness of the natural father must be considered.[19] From the *251 record it is clear that no evidence as yet has been adduced concerning the fitness of the father to care for B.R.F., his daughter. Under the logical dictates of the Missouri Act, we must and do presume that when the determination is made about the permanent custody of B.R.F., the appropriate court in New Jersey will properly protect and impartially consider the interests, rights and privileges of all parties and act in the best interest of B.R.F.[20]Holt v. District Court, 626 P.2d 1336, 1344 (Okl. 1981); See also In Re Lemond, 395 N.E.2d 1287, 1291-92 (Ind.App.1979).
The grandmother requests that we award her attorneys' fees and the expenses of returning the minor to the grandmother's custody. § 452.510 RSMo[21] (UCCJA § 15). On the present record, we find no reason to award the grandmother attorneys' fees, and, as to expenses, an order to the father to return the physical custody of B.R.F. to the grandmother will suffice.
Accordingly, we find the writ lies and order the father, F.F., to return the physical custody of B.R.F. to the grandmother, B.S.G., under and pursuant to the order of temporary custody of the New Jersey Court.
SIMON, P.J., and STEPHAN, J., concur.
NOTES
[1] In the record, this court is also designated "Burlington County Domestic Court, Juvenile and Domestic Relations Division."
[2] The custody of the brother is not in issue here.
[3] An unsigned memo, dated March 23, 1982, states that the award of custody and visitation rights were "[t]o be reviewed in June." An order, signed by the Judge, dated March 24, 1982, set no specific date for review but made the award of temporary custody and visitation rights subject to "further order of [the] Court."
[4] According to the grandmother's brief, it was "[o]nly after the Missouri Order of Custody was entered" and the father had brought B.R.F. back to Missouri that the Missouri Court was "made aware of the pendency [of] Orders previously entered by the New Jersey Courts." Neither the brief nor the record, however, indicates the date on which or the method by which the Missouri Court was made aware of this information; nor does the brief or record indicate whether further action was taken or whether further proceedings were held by the Missouri Court.
[5] Habeas Corpus may be used to implement the UCCJA in disputed custody proceedings. Commissioners' Note, UCCJA § 2, 9 ULA 120 (Master ed. 1979); e.g., Slidell v. Valentine, 298 N.W.2d 599, 605 (Iowa 1980).
[6] The provisions of the UCCJA adopted in Missouri are found in §§ 452.440452.550 RSMo 1978, and those adopted in New Jersey are found in §§ 2A:34-282A:34-52 N.J.Stat.Ann. (West Supp.1983-1984). Unless otherwise stated, citations to these statutes will be to RSMo 1978 and to N.J.Stat.Ann. (West Supp.1983-1984). For reference, the corresponding section of the UCCJA also will be cited.
[7] The Parental Kidnapping Act (PKA), 28 U.S.C. 1738A (1980) may also affect this custody issue, and the issue may be affected by the Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, implemented by 28 U.S.C. § 1738. We, however, do not find it necessary to discuss these laws.

The PKA closely tracks the jurisdictional requirements of the UCCJA, and, for our purposes here, the relevant provisions are identical. Similarly, while there still remains some question whether full faith and credit must be given to custody decrees of a sister state under the Full Faith and Credit Clause and 28 U.S.C. § 1738, See Webb v. Webb, 451 U.S. 493, 495-96, 101 S.Ct. 1889, 1891-92, 68 L.Ed.2d 392 (1981); Ford v. Ford, 371 U.S. 187, 192, 83 S.Ct. 273, 276, 9 L.Ed.2d 240 (1962); Kovacs v. Brewer, 356 U.S. 604, 608, 78 S.Ct. 963, 966, 2 L.Ed.2d 1008 (1958); May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953); New York ex rel. Halvey v. Halvey, 330 U.S. 610, 615-16, 67 S.Ct. 903, 906-07, 91 L.Ed. 1133 (1947), states may obligate themselves to do so. See, Restatement (Second) Conflicts of Law, § 109(2), 1971.
The UCCJA does mandate enforcement of a sister state's custody decrees, under defined circumstances, and we, therefore, resolve the custody issue here under the UCCJA, as adopted in Missouri.
[8] Since the Missouri Court's jurisdiction over the divorce decree abated, the Court's ex parte order, attempting to modify the divorce decree, was void. This, however, did not leave B.R.F. in legal limbo. Although the mother's right to custody of B.R.F. could neither descend nor be transmitted by her on her death, Schumacher v. Schumacher, supra at 845, the father's right to custody of B.R.F. was, by operation of law, restored to him as the surviving natural parent, if he were otherwise fit. Id. at 845; State ex rel. Walker v. Crouse, supra 205 S.W.2d at 750. Thus, the Missouri Court's order, although void, did reflect the legal status of B.R.F. vis-a-vis the father at the mother's death. Absent proper assumption and exercise of jurisdiction by the New Jersey Court, presumably, the father could have enforced his right to custody by seeking a writ of habeas corpus in the proper New Jersey Court. Schumacher v. Schumacher, supra at 845.
[9] Logic, as well as the language and purpose of the UCCJA, dictate that the New Jersey Act should be used. See Ehrenzweig, Conflict of Laws, § 59, p. 213 (1962). A review of the case law, however, indicates that in testing the propriety of the assumption and exercise of jurisdiction by a court of a sister state, the court of the forum state will use the forum state's version of the UCCJA rather than the sister state's version. See, e.g., In re McDonald, 74 Mich.App. 119, 253 N.W.2d 678, 681 (1977); Brooks v. Brooks, 20 Or.App. 43, 530 P.2d 547, 551 (1975). But see Agnello v. Becker, 440 A.2d 172, 175-177 (Conn.1981) (cites both statutes but reprints Connecticut law in margin). Admittedly, this procedure does square with presently existing general principles of interstate recognition of judgments. See Ehrenzweig, supra at 214.
[10] Thus, we do not reach the issue of whether the duties of § 452.500 RSMo to recognize and enforce the custody order of the New Jersey Court are also conditioned on the compliance of the New Jersey Court with discretionary standards of the New Jersey Act. § 2A:34-35 and 2A:34-36 N.J.Stat.Ann.; § 452.470 RSMo (Supp. 1983) and § 452.475 RSMo (UCCJA §§ 7 and 8). See Pasqualone v. Pasqualone, 63 Ohio St.2d 96, 406 N.E.2d 1121, 1127 (1980) (duty to enforce apparently conditioned on Ohio's version of UCCJA §§ 7 and 8).
[11] § 2A:34-31 provides:

"Jurisdiction of Superior Court
a. The Superior Court of the State of New Jersey has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
(2) It is the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is the best interest of the child that this court assume jurisdiction.
b. Except under paragraphs (3) and (4) of subsection a., physical presence in this State of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination.
c. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."
[12] In Missouri, the jurisdictional requirement of "home state" still uses the term "person acting as a parent." § 452.450 RSMo. The statutory definition of "person acting as a parent", however, was deleted by new § 452.455, effective August 13, 1982. Since the grandmother petitioned the New Jersey Court in February, 1982, this deletion of the definition does not affect the jurisdictional facts in question. Moreover, we have no legislative history in Missouri to aid us in determining the reason for the deletion. In the absence of a statutory definition, we find a maternal grandmother who is caring for her grandchildren upon the mother's death fulfills a common sense definition of "person acting as a parent" in § 452.450 RSMo. Thus, the New Jersey Act still substantially conforms to the Missouri Act, and the grandmother here would be a "person acting as a parent" under the Missouri Act as well as under the New Jersey Act.
[13] The divorce decree, dated December 3, 1976, was introduced into evidence. It showed the mother to be a resident of New Jersey and it awarded custody of B.R.F. to her.
[14] In her "complaint" before the New Jersey Court, filed February 2, 1982, the grandmother alleged she had been caring for the children since the mother's death on January 11, 1982, a three-week period. Nothing of record shows the grandmother was in New Jersey before February 2, 1982. Moreover, at the hearing on March 23, 1982, the grandmother testified under oath that her legal residence was in Indiana.
[15] The father does not contend his procedural due process rights were violated because he did not have sufficient contacts with New Jersey to meet the minimal contacts required by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. See Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); and see May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); see also, Coombs, supra, 66 Minn. L.R. at 735-764.

Without comment, we do note that the Commissioners' Note to § 12 UCCJA states: "There is no requirement for technical personal jurisdiction, on the traditional theory that custody determinations, as distinguished from support actions ... are proceedings in rem or proceedings affecting status .... [This] section is not at variance with May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953), which relates to interstate recognition rather than instate validity of custody decrees." 9 ULA 150 (Master ed. 1979)
[16] § 2A:34-32 N.J.Stat.Ann. tracks the specific language of § 4 of the UCCJA by requiring "reasonable notice and an opportunity to be heard." The Missouri Act originally used the same language. § 452.455 RSMo 1978. In 1979, this statute was repealed and new § 452.555 now provides that any parent whose parental rights have not been terminated "must be served in the manner provided by the rules of civil procedure and applicable court rules ..." before a custody decree may be rendered. The rules referred to merely define specific steps for insuring "reasonable notice and opportunity to be heard."
[17] In March, 1982, the time of the original hearing, jurisdiction of the New Jersey Court, the Juvenile and Domestic Relations Court, was limited, in custody matters, to awards of temporary custody. In Re Stevens, 27 N.J.Super. 276, 99 A.2d 373, 373-374 (N.J.Super.Ct.App.Div.1953). Permanent custody was obtained by petitioning the New Jersey Superior Court. Id. 99 A.2d at 373-374. As a statutory court, the Court had no inherent power or authority. Shanley v. Nuzzo, 160 N.J.Super. 436, 390 A.2d 158, 160 (J. & D.R.Ct.N.J.1978). Its jurisdiction was defined by statute. Id. 390 A.2d at 160. On September 1, 1983, the Juvenile and Domestic Relations Courts in New Jersey were abolished and reestablished as County Family Courts. § 2A:4-3.1 N.J.Stat.Ann. (West Supp.1983-84). The Family Courts are also courts of limited jurisdiction § 2A:4A-1 N.J.Stat.Ann. (West Supp.1983-84), having jurisdiction to hear and determine all cases formerly heard by the Juvenile and Domestic Relations Courts. § 2A:4A-2 N.J.Stat. Ann. (West Supp.1983-84).
[18] Commentators are still debating whether an award of custody which is punitive must be recognized and enforced under the UCCJA. See, Coombs, supra at 780-783 (award of custody must be enforced whether punitive or not); But see Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Calif.L.R. 978, 1003-1009 (1977). (The author, the Reporter for the Act, modified her original view that foreign custody decrees should be recognized and enforced whether punitive or not and now states: "If the decree is punitive ..., it falls under the equitable exemption from recognition under the Act." Id. at 1007 (Fn. 168).)

The legislative history of the PKA, 28 U.S.C. § 1738A (1980) indicates that no exemption from its provisions should be made for punitive decrees. Coombs, supra at 783.
[19] In addition to the similarities between the New Jersey Act and the Missouri Act, the New Jersey law applicable to the custody issue here parallels Missouri law. Thus, in New Jersey, just as in Missouri, upon the death of the custodial natural parent, the right to custody of a child reverts to the surviving natural parent, Kridel v. Kridel, 85 N.J.Super. 478, 205 A.2d 316, 322 (N.J.Super.Ct.1964) if the surviving parent is otherwise fit. See Jacobson v. Jacobson, 146 N.J.Super. 491, 370 A.2d 65, 68 (N.J.Super.Ct.Ch. Div.1976); See also, In Re Elmer's Guardianship, 125 N.J.Eq. 148, 4 A.2d 387, 388 (1939). Moreover, in a child custody dispute between the natural parent and a third party, in either state, the best interest of the child is of primary importance. E.g., Johnson v. Johnson, 628 S.W.2d 709, 713 (Mo.App.1982); Hoy v. Willis, 165 N.J. Super. 265, 398 A.2d 109, 112 (N.J.Super.Ct.App. Div.1978).

The relative importance of blood ties between the natural parent and the child may differ slightly in the two states. In Missouri, the law presumes the interest of the child will be best served by placing the child with its natural parent. In re Marriage of Wofford, 589 S.W.2d 323, 325-326 (Mo.App.1979); Ex parte McCarter, 434 S.W.2d 14, 16-17 (Mo.App.1968). This presumption, however, can be rebutted not only by showing the natural parent is unfit, but also by showing "extraordinary circumstances", even where the natural parent has not been shown to be unfit. In the Interest of K.K.M., 647 S.W.2d 886, 889 (Mo.App.1983). In New Jersey, it is not clear that the same presumption exists, but the blood ties between parent and child are given significant weight. See, Palermo v. Palermo, 164 N.J.Super. 492, 397 A.2d 349, 351-352 (N.J.Super.Ct.App.Div.1978). Like Missouri, the significant weight of these blood ties can be overcome by other circumstances, even though there is no finding the natural parent was unfit or had abandoned the child, S.M. v. S.J., 143 N.J.Super. 379, 363 A.2d 353, 356 (N.J.Super.Ct. Ch.Div.1976), and despite the fact that the natural parent was both emotionally and economically fit to care for the child. Palermo v. Palermo, supra 397 A.2d at 351-352.
[20] "The [UCCJA] deals almost exclusively with the interstate aspects of custody proceedings. It does not concern itself with the manner in which the judge arrives at the custody judgment, the use of trained personnel to make custody investigations or social studies, or the provision of independent legal representation for the child.... [In order for the Act to function properly, it] requires high standards of custody procedures under local law in order to be completely successful." Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand.L.R. 1209, 1219 (1969).
[21] Section 452.510(2) RSMo provides:

"...
2. A person violating a custody decree of another state which makes it necessary to enforce the decree in this state may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody or his witnesses."