HARVEY KENJI MINATOYA and AMERICAN TRUST COMPANY OF HAWAII, INC., a Hawaii corporation, as Trustees, Plaintiffs-Appellees, *v.* CHARLES MOUSEL and ALBERTINA MOUSEL, Defendants-Appellants

NO. 6721

MARCH 9, 1981

PADGETT, ACTING C.J., BURNS, J., AND
CIRCUIT JUDGE FONG IN PLACE OF
CHIEF JUDGE HAYASHI, DISQUALIFIED

2

OPINION OF THE COURT BY BURNS, J.

This case involves a boundary dispute between owners of adjoining residential land in Kualoa, Oahu.

In April 1976, Appellant Albertina Mousel (Mrs. Mousel) sent her neighbor Mrs. Minatoya a letter asking her to "please move your garage on to your own property". There being no response, the Mousels tore up the concrete driveway at the entrance of the garage, extended their panax hedge so as to partially block the entrance to the garage, and padlocked a shower attached to the garage.

In response, appellees filed this action to permanently enjoin the Mousels "from coming upon" their property and for damages for trespass, for interference with use and enjoyment of property and for physical damage to the property.

The Mousels' title traces back to 1917 when Mrs. Mousel's father, Mr. Roberts, purchased approximately one-half of an acre of land. In January 1956, Mr. Roberts acquired from the Territory additional land between his property and Kamehameha Highway which had become available because of the realignment of the highway. Immediately thereafter, Mr. Roberts subdivided all of his land into parcels 1, 2, 3, 4 and 5. In 1962, solely for purposes of adjusting the north-south boundary between lots 4 and 5, Mr. Roberts consolidated lots 4 and 5 and resubdivided them into lots 4-A and 5-A. Later in 1962 Mr. Roberts died and Mrs. Mousel inherited lot 5-A (Mousel property).

By deed in 1945, Mrs. Minatoya acquired her property (Minatoya property) located on the north side of and adjoining lots 4-A and 5-A between Kamehameha Highway and the ocean. In 1972, she conveyed the property to appellees in trust.

The 1917 deed describes the boundary of the Mousel property fronting Kamehameha Highway and the boundary which adjoins the Minatoya property as:

> Beginning at a + on a stone in the stone wall near the sharp turn of Government Road, ... and running by assumed true azimuths: 1. 188° 27' 220.0 feet along makai line of Government Road; 2. 278° 27' 115.0 feet more or less along remainder of Kualoa to high water.

The 1945 deed describes the boundary of the Minatoya property which adjoins the Mousel property as starting at the same place and running on the same assumed azimuth for the same distance.

In 1945, there was a white wooden fence running along azimuth 274° 40' between the properties. For some time prior to 1955, the Territory of Hawaii Survey Department described the boundary of the Mousel property fronting Kamehameha Highway as running on azimuth 9° 20' for 209.45 feet and it described the boundary adjoining the Minatoya property as running on azimuth 274° 40' along the white fence line to the ocean.

Thus, the Territory used azimuth 274° 40' as the northern boundary of the remnant it sold to Mr. Roberts in 1955; Mr. Roberts used azimuth 274° 40' as the northern boundary of his property when he subdivided his property in 1956; and Mr. Roberts again used azimuth 274° 40' when he resubdivided lots 4 and 5 in 1962.

The crucial factual issue at trial was whether the adjoining boundary ran along azimuth 278° 27' or 274° 40'.

After a bench trial, the lower court concluded that by paper title and by adverse possession the adjoining boundary between the two properties is what the Territory Survey Department said it was, true azimuth 274° 40', and that the Mousels' acts constituted a tortious trespass upon the Minatoya property. The lower court awarded the appellees the right to a permanent injunction,[1] damages of $50.00

---

[1] Apparently the injunction has not yet been issued.

4

for the locking, $100.00 for the destruction of the driveway and the planting of the hedge, and $1.00 for all other acts of trespass.

## PAPER TITLE

The Mousels contend that the appellees (the Minatoyas) failed to prove paper title because their deed specifies that they own only to azimuth 278° 27′ and not to 274° 40′ and that their boundary starts 220 feet from the + on a stone on the stone wall, not 209.45 feet. This contention ignores the distinction between what is assumed to be true and what is in fact true.

At trial, the Minatoyas introduced the 1945 deed by which they acquired their land which showed the disputed boundary as running along "assumed true azimuth 278° 27′″". However, they also introduced testimony from "an expert in the field of survey" that in this case "assumed true azimuth 278° 27′″" is the same as "true azimuth 274° 40′″" and that the 220 feet figure is really 209.45 feet.

In its findings of fact, the lower court stated the basis for the expert's conclusion.

4. In earlier times, without the benefit of the complex and precise scientific equipment now used in surveying, and due in part to the relative abundance of marketable land, surveys based upon assumed azimuths, while not accurate, were nevertheless accepted.

5. The land description based upon an assumed azimuth is only an estimate of the true boundaries so long as the azimuths described remain "assumed". A true survey, using true azimuths, describes the actual boundaries of the land described. A description based on assumed azimuths and a description based on true azimuths describe the same piece of property, even though the descriptions differ. The difference, if any, is attributable to the "assumed" as opposed to "true" azimuths used as a reference in describing the land.

6. Distances as described in old deeds based on assumed azimuths are apt to be in error, again partly attributable to imprecise instruments used to measure the distances.

These findings are consistent with our supreme court's thoughts on the subject as stated in *In Re Application of Eklund,* 51 Haw. 568 at 579, 465 P.2d 552 at 558 (1970).

The lower court's findings not being clearly erroneous, we find no error in its decision that by paper title the Minatoyas own up to azimuth 274° 40'.

## ADVERSE POSSESSION

The Mousels contend that the Minatoyas never claimed any more land than they acquired by the 1945 deed to them and therefore that they do not satisfy the requirement that they possessed the land with hostility. We disagree.

The Mousels' contention misstates the evidence. The evidence indicates that the Minatoyas always thought their deed included the land up to the fence (which ran along true azimuth 274° 40') between the two properties.

The Mousels' contention also misstates the law.

It is the rule in this jurisdiction that color of title is not indispensable to prove title by adverse possession if the other necessary elements, namely, actual, open, notorious, continuous and exclusive possession for the statutory period as the apparent owner, are shown to exist, and is [sic] not explained. (*Albertina v. Kapiolani Estate,* 14 Haw. 321, . . .

*Territory v. Pai-a,* 34 Haw. 722, 725-26 (1938). *See Lai v. Kukahiko,* 58 Haw. 362, 569 P.2d 352 (1977).

## COLOR OF TITLE AND ADVERSE POSSESSION

The Mousels contend that the lower court's judgment must be vacated because it was based upon inconsistent findings of both title by deed and title by adverse possession.

We leave to legal theoreticians the question of whether one who owns by paper title also owns by adverse possession. In this case, we hold that the fact that the lower court found that the appellees own the disputed area by paper title, by the doctrine of acquiescence,[2] and by adverse possession[3] is not grounds for invalidating the findings nor is it a basis for vacating the resulting judgment.

---

[2] 12 AM. JUR. 2d *Boundaries* § 85 (1964).

[3] Hawaii Revised Statutes (HRS) § 669-1 (1976).

## DAMAGES

1. The Mousels further contend that a part of the property upon which they allegedly trespassed is a remnant owned by the State between the Minatoya property and Kamehameha Highway; that the Minatoyas cannot collect for a trespass and damage to State land; and that the Minatoyas have not segregated their portion of damages from the portion claimable only by the State. Again the Mousels' contention misstates the law.

With respect to the ejectment aspects of this case, prior possession is sufficient to maintain ejectment as against a mere trespasser or intruder. 25 AM. JUR. 2d *Ejectment* § 42 (1966). The same rule applies with respect to the trespass aspects of this case. 75 AM. JUR. 2d *Trespass* § 23 (1974).

The evidence supports the trial court's implicit conclusion that at the initiation of the trespass the Minatoyas were in possession of their property and the State's property between their property and Kamehameha Highway. Thus, the Minatoyas were entitled to ejectment and damages for trespass with respect to both their property and the State's property.

2. The Mousels contend that there was absolutely no proof of the value of the damages suffered and in the absence of such proof no monetary award in excess of nominal damages is appropriate. The appellees concede that they did not prove the value of the damages. But appellees argue that nominal damages may be more than $1.00. We think *Ferreira v. Hon. Star-Bulletin,* 44 Haw. 567, 356 P.2d 651 (1960), is binding authority that nominal damages may not exceed $1.00. Therefore, we conclude that the court erred in awarding more than $1.00.

## BIAS OF THE JUDGE

The Mousels contend that the lower court erred in denying their motion for a new trial which was based on their contention that they were denied a fair trial because the trial judge "strongly felt that they were obtaining the representation of the Legal Aid Society of Hawaii illegally. . . ."

When the trial started, the trial judge stated:

And the Court is wondering on what basis Legal Aid Society is

representing these people without cost to them as the Court would understand, when they have value in the amount of $45,000.

After some discussion, the judge stated:

[T]he Court will proceed with this trial; and the Court will transmit a question to Judge Kanbara's committee to inquire into the eligibility of the defendants to be represented by Legal Aid Society; the express understanding being that that question . . . will not become moot as a result of proceeding with trial this morning.

Thereupon, the Mousels' counsel orally requested that the judge recuse himself from hearing the case. The judge denied the request stating:

[T]he Court has no feelings on the boundary question one way or the other. The Court has no feelings for or against any of the parties at this time. The only question is whether the Legal Aid Society is properly representing a person at taxpayers expense. . . .

The Mousels did not appeal the denial of their oral motion.

The next day, when the plaintiff called Mr. Mousel as an adverse witness, the trial judge, over defense counsel's objection, questioned Mr. Mousel concerning his ownership of lands upon which he was farming.

After the judge rendered his oral decision, but before he entered written findings and conclusions, he wrote to Judge Kanbara, Chairman, State Advisory Council of the Legal Services Corporation, inquiring whether the Mousels were entitled to assistance by Legal Aid. In his letter, he stated, *inter alia,* "It shocks the conscience when this charitable legal assistance, which supposedly is available only to those who are 'indigent' in our society, is extended to persons who have assets as described in this case."

After the trial judge entered written findings of fact, conclusions of law and judgment in appellees favor, the Mousels moved for a new trial, asserting that they were denied a fair trial because the judge's belief that Legal Aid should not be representing them made him biased and prejudiced against them and their side of the case.

The trial judge denied the motion stating: "The Court's inquiry had nothing to do with parties as such but simply on principle, whether in fact Legal Aid Society is properly representing a person

eligible for representation." We do not rule on the propriety of the trial judge's inquiry. We hold that if the Mousels truly believed that they could not obtain a fair trial because the trial judge was not impartial, they were required to move to disqualify him before he entered his ruling on the merits, *Re H. Bouslog, an attorney at law,* 41 Haw. 270 (1956), and they were required to do it in conformity with HRS § 601-7(b) (1976).[4] The Mousels having failed to satisfy either of the two requirements, their motion for new trial was properly denied.

## RIGHT TO APPEAL IN FORMA PAUPERIS

The Mousels contend that the lower court abused its discretion under HRS § 607-3 (1976)[5] when it denied their motion to appeal *in forma pauperis* with a waiver of all costs and fees. We disagree.

According to Mr. Mousel's supporting affidavit, his income was $40.55 per week; the real estate mentioned in this case was in Mrs. Mousel's name; and he claimed "ownership of property which is not readily marketable". The affidavit did not identify, describe, or value the property he owned, nor did it say what Mrs. Mousel's income was, if any, or what other assets she owned, if any.

---

[4] § 601-7 Disqualification of judge; relationship, pecuniary interest, previous judgment, bias or prejudice.***

(b) Whenever a party to any suit, action or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify himself by filing with the clerk of the court of which he is a judge a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action.

[5] § 607-3 Court costs, waiver of prepayment, reduction or remission of. The judges of all the courts of the State shall have discretionary power to waive the prepayment of costs or to reduce or remit costs where, in special or extraordinary cases, the cost of any suit, action, or proceeding may, to the judges, appear onerous.

The Mousels cite criminal cases as precedent for their contention that the value of Mrs. Mousel's residence should not have been considered. Since criminal cases involve constitutional considerations, we find them inapposite. We believe our ruling in *Cleveland v. Cleveland,* 1 Haw. App. 187, 616 P.2d 1014 (1980), is more on point. There we held that when considering a person's ability to pay, the court may consider the size of the movants' estate and his or her net worth.

We conclude that the insufficiency of the content of the affidavit and the fact that Mrs. Mousel owns a valuable parcel of real estate are sufficient reasons for the lower court to have denied their motion.

## CONCLUSION

Except as to damages, the lower court's judgment is affirmed. Only with respect to damages, the judgment is reversed and the case is remanded with instructions to enter judgment for nominal damages in the amount of $1.00.

*Ronald Albu* (Legal Aid Society of Hawaii) for defendants-appellants.

*Dale W. Lee (Ukishima & Matsubara* of counsel) for plaintiffs-appellees.