544 So.2d 502 (1989)
James BURKS and Ruthie Burks, Plaintiffs-Applicants,
v.
Katherine L. McKEAN, et al., Defendants-Respondents.
No. 20,549-CW.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1989.
*503 Raymond L. Cannon, Tallulah, for plaintiffs-applicants, James and Ruthie Burks.
Hayes, Harkey, Smith, Cascio & Mullens by Charles S. Smith, Monroe, for defendant-respondent, State Farm Mut. Auto. Ins. Co.
Theus, Grisham, Davis & Leigh by David H. Nelson, Monroe, for defendant-respondent, Security Nat. Ins. Co.
Before HALL, MARVIN, FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
On October 20, 1988, this court granted the application of the plaintiffs, James and Ruthie Burks, for supervisory writs. The plaintiffs ask this court to reverse the ruling of the trial court denying their application to proceed in forma pauperis on the devolutive appeal and to fix the costs necessary to perfect the appeal.
Ruthie Burks was injured when she was struck by an automobile driven by the defendant, Katherine McKean. Ruthie and her husband James filed suit against McKean, United Services Automobile Association (McKean's primary liability insurer), and State Farm Mutual Automobile Insurance Company (McKean's excess liability insurer). The trial court signed an order authorizing the plaintiffs to prosecute the action in forma pauperis. On July 31, 1987, the plaintiffs settled their claim against McKean and USAA for $65,000. The record reveals that the plaintiffs' portion *504 of the settlement was $45,000. The judgment of dismissal ordered that the parties bear only the costs attributable to them as of the date of the settlement.
Arguing that the receipt of the funds made the plaintiffs financially able to pay the costs of the lawsuit, a remaining defendant, State Farm, filed a rule to traverse the plaintiffs' right to proceed in forma pauperis. A hearing on the motion was held in December 1987. The court sustained the rule to traverse and ordered the plaintiffs to pay all the costs attributable to them and incurred up to that point. The plaintiffs did not seek relief from these rulings.
The jury trial was held in January 1988. The jury found that McKean, State Farm's insured, was free of negligence.
Chronologically, the next item we find in the record is a rule filed by the clerk of court of Madison Parish directed to the plaintiffs asserting that the plaintiffs had failed to pay the costs taxed against them "by Judgment of this Court, dated on the 29th of January, 1988," and ordering the plaintiffs to show cause on March 24th why they should not pay all costs prior to the preparation of the record for appeal.[1]
Then, in a written opinion of April 5, 1988, the trial court sustained the clerk's rule and ordered the plaintiffs "to pay all costs as demanded by the clerk and to furnish the reasonable and customary security for their appeal."[2]
Next, the trial court signed a judgment rejecting plaintiff's demands on April 11, 1988. On June 15, 1988, plaintiffs obtained an order of devolutive appeal from that judgment.[3]
On June 27, 1988, the plaintiffs filed a motion to be allowed to proceed in forma pauperis and a concurrent rule to reduce costs as excessive. After a hearing on this motion on September 20, 1988, the trial court denied the rule to reduce court costs. The court also denied the plaintiffs' application to proceed in forma pauperis because, at the December hearing on the motion to traverse, the court stated it had advised plaintiffs that they would need to save some of the settlement proceeds in case they had to pay future court costs. It is from this ruling that we granted plaintiffs' application for supervisory writs to this court on October 20, 1988.
The plaintiffs assign as errors the trial court's denial of the rule to reduce the estimated costs to lodge the appeal and the denial of their application to proceed with the devolutive appeal in forma pauperis. The plaintiffs argue that the trial court costs should not be included as an item of the estimated costs required to be paid to perfect a devolutive appeal. Also, the plaintiffs argue that the receipt of $45,000 under the settlement with McKean and USAA does not disqualify them from proceeding in forma pauperis on appeal because of their deteriorating financial condition and because of expenses necessary to accommodate Mrs. Burks in the light of problems she experiences as a result of the accident at issue.
The thrust of the defendant's argument is that the plaintiffs' request to appeal in forma pauperis and to have the court reduce the appeal costs comes too late. The defendant complains that although the plaintiffs knew since December 28, 1987 that they were responsible for their share of court costs, they did not pay them.
Thus, the issues before us are whether the trial court erred in denying the plaintiffs' application to proceed in forma *505 pauperis on appeal[4] and whether the trial court erred in not reducing the estimated appeal costs. The threshold question is the defendant's contention that the plaintiff's motion to proceed in forma pauperis on appeal is untimely.
Past Louisiana jurisprudence has held that a motion to proceed in forma pauperis on appeal had to be filed within the delays for perfecting the appeal. See Wilkerson v. Luneau, 198 So.2d 183 (La.App. 1st Cir. 1967); Evans v. Livingston People's Gas Corporation, 205 So.2d 466 (La.App. 1st Cir.1967); Hyatt v. Hartford Accident & Indemnity Company, 225 So.2d 102 (La. App. 3rd Cir.1969), writ denied, 254 La. 841, 227 So.2d 590 and 254 La. 847, 227 So.2d 592 (1969); Brumfield v. Community Mobile Homes, Inc., 315 So.2d 901 (La. App. 1st Cir.1975); Donica v. Donica, 324 So.2d 847 (La.App. 1st Cir.1975); Le Duff v. Prudential Insurance Company of America, 345 So.2d 72 (La.App. 1st Cir. 1976); Bourque v. Singleton, 417 So.2d 77 (La.App. 3rd Cir.1982). However, all of these cases, with the exception of Bourque, arose prior to significant changes in appellate procedure. Formerly, LSA-C. C.P. Art. 2087 provided a ninety day period within which to perfect a devolutive appeal. The appeal was perfected by obtaining an order of appeal and furnishing security for costs.
Under the jurisprudence cited above, if an appellant sought to proceed in forma pauperis, in order to perfect the appeal, the appellant was required to obtain an order of appeal and file his forma pauperis motion within the ninety day period. Therefore, a devolutive appeal was properly perfected only when the appellant obtained an order of appeal and filed the appeal bond, or in lieu of the bond, properly obtained an order to proceed in forma pauperis within the appellate delay period. Brumfield, supra. [Emphasis ours] When an appellant invoked the provisions of LSA-C.C.P. Art. 5181, which pertains to the waiver of costs for an indigent litigant, the courts required that it be viewed in conjunction with Article 2087. Evans, supra; Brumfield, supra.
However, Article 2087 was amended in 1977, effective January 1, 1978, to delete the requirement for the posting of security for a devolutive appeal.[5] See also LSA-C. C.P. Art. 2124. Therefore, initially, an appellant is only required to obtain an order of appeal within the appellate delay period.
LSA-C.C.P. Art. 2126 provides that immediately after the order of appeal is granted, the clerk of the trial court shall estimate the cost of preparation of the record on appeal and send the appellant a notice by certified mail of the estimated costs. The appellant is to pay the estimated costs within twenty days of the mailing of notice. (An extension of not more than an additional twenty days may be granted.) During this initial twenty day period, the appellant may question the excessiveness of the estimated costs by filing a written application for reduction in the trial court.
We hold that the appellant also has until the end of the initial twenty day period to seek an order to proceed in forma pauperis. This is compatible with the present statutory procedure for devolutively appealing. Consequently, with the change in the law, we find that the above cited jurisprudence is no longer applicable. (We note that in the Bourque case the appellate court made no reference to the changes in appellate procedure.)
Here, the plaintiffs/appellants filed their forma pauperis motion within the first twenty day period. Accordingly, their motion to proceed in forma pauperis was timely filed.
As the plaintiffs' motion to proceed in forma pauperis was timely filed, we must consider whether the trial court erred in denying their motion. Generally, a litigant's right to proceed in forma pauperis is largely within the discretion of the trial court. Johnson v. St. Francis Medical *506 Center, Inc., 521 So.2d 803 (La.App. 2d Cir.1988). However, under the circumstances of the present case, we conclude that the trial court abused its discretion.
The privilege to litigate in forma pauperis is intended to be restricted to those who are clearly entitled to it so that the statute will not be abused, but a liberal construction should be applied in close or questionable cases to make sure that a litigant who is entitled to such privilege is not deprived of it. In determining a litigant's qualifications to proceed as an indigent, the court must take a realistic view of the litigant's actual ability to advance or secure court costs out of net income available for that purpose, after payment of reasonable living expenses and debts, and in view of unencumbered property, other than a modest family residence. The issue is the litigant's ability to pay costs and advance costs or post bond for costs so that if found unable to do so the litigant will not be deprived of his day in court. Johnson, supra.
The evidence presented at the September 20, 1988, hearing adequately supports the plaintiffs' contention that they are unable to pay court costs and are thus entitled to proceed in forma pauperis on appeal. Although the plaintiffs did receive a settlement from one of the parties, these funds were expended on modest home repairs made necessary by Mrs. Burks' condition. Additionally, Mr. Burks is the only employed member of the household, and his income is insufficient to meet the family's needs. Due to her injuries, Mrs. Burks is in continuing need of costly medical care and medication. Furthermore, the evidence demonstrated that the plaintiffs could not even obtain a bank loan of $2,000.
Based on the foregoing, we conclude that not only was the plaintiffs' motion to proceed in forma pauperis timely, it was also meritorious. Therefore, we reverse the trial court's ruling denying the plaintiffs the privilege of proceeding in forma pauperis.
We now consider the plaintiffs' rule to reduce the estimated costs of appeal as excessive. As previously mentioned, LSA-C.C.P. Art. 2126(C) provides that the appellant may question the excessiveness of the estimated costs of appeal by filing a written application for reduction in the trial court within twenty days of the clerk's mailing of notice of the estimated costs. The clerk in the present case sent the notice of appeal costs on June 20, 1988. On June 27, 1988, the plaintiffs filed the rule to reduce costs.
The plaintiffs' complaint as to the costs is two-fold. They contend that they should not have to pay the trial costs in order to obtain an appellate record, and they also complain that the estimated appeal costs are excessive. In this regard, the clerk of court of Madison Parish testified at the hearing on the motion to proceed in forma pauperis on appeal that the total trial court costs were $12,086.10 and that the estimated appeal costs were $5,910. The clerk also testified that he would not prepare the record for appeal until the plaintiffs paid the total costs of $17,996.10.
Because of the disposition we reach, we do not consider plaintiffs' contentions regarding specific trial costs.[6]
LSA-C.C.P. Art. 2126(A) specifically provides:
[t]he clerk of the trial court, immediately after the order of appeal has been granted, shall estimate the cost of the preparation of the record on appeal, including the fee of the court reporter for preparing the transcript and the filing fee required by the appellate court.
The statutory scheme for trial court costs requires that a plaintiff advance certain initial costs as an advance deposit which the clerk may charge against as costs accrue. LSA-R.S. 13:842. When that sum runs out, the party incurring additional costs is responsible to the clerk for those costs, LSA-R.S. 13:843, just as the party who requests a jury trial must furnish *507 a bond therefor and is responsible to the clerk for those costs. LSA-C.C.P. Art. 1733, et seq. If a party incurs costs and does not reimburse the clerk for those costs within ten days of demand therefor, the clerk is entitled to proceed against the party incurring the costs and obtain a judgment for that sum. LSA-R.S. 13:843 B(2).
Indeed, Act No. 937 of 1984 emphasized that point by substituting the language "incurring or necessitating the additional costs" for the language "primarily responsible therefor" in paragraph (1) of Subsection B of LSA-R.S. 13:843. This act thus legislatively overruled Meyers v. Basso, 398 So.2d 1026 (La.1981), which held that the previous statutory language made the plaintiff primarily responsible for trial court costs.
We agree that the judgment in the trial court assessing costs against one of the parties is not the property of the clerk. That is a matter between the litigants. The clerk may only proceed against the party responsible for incurring the costs. See Op. Att'y Gen. No. 87-104.
In summary, on the basis of the trial court judgment rejecting the plaintiffs' demands, the clerk has endeavored to collect all of the trial costs, as well as the estimated appeal costs, from the plaintiffs before he will prepare the record on appeal, and has obtained an order of the trial court enforcing that position.
For the reasons aforesaid, we determine that that order is in error. The only costs which may be appropriately collected before the clerk prepares the record for appeal are those set out in LSA-C.C.P. Art. 2126. Simply stated, this article is to be literally interpreted and an appeal may not be held hostage for the payment of trial court costs. See Lege v. State Farm Mutual Automobile Insurance Co., 386 So.2d 123 (La.App. 3d Cir.1980), writ denied, 392 So.2d 684 (La.1980). The clerk is adequately protected by the statutes previously referenced. The trial court judgment requiring that the plaintiffs must pay or post bond for the trial costs of $12,086.10 is erroneous and is set aside.
The next issue is whether the estimated appeal costs of $5,910 are excessive. The fee for filing the record with the court of appeal is $111. While the $3,500 fee for transcribing the record appears high, it is supported by the record. The court reporter estimated that the transcript would be well over 1,000 pages at $3.00 a page ($2.00 for the original and $.50 a page for the two copies).[7] We will allow this sum.
However, we find that the $2,300 clerk's fee to compile the record is not supported by the record and is excessive. Although the clerk of the district court testified about some of the specific trial court costs, he did not testify about what the $2,300 fee covered for "compiling the record." So far as we are aware, this fee only covers whatever costs are involved in actually compiling the trial court pleadings and the transcript into a record. The sum of $100 should be adequate for this service.
Thus, the total appropriate fees for preparation of the record on appeal, including the fee of the court reporter in accordance with LSA-C.C.P. Art. 2126, are hereby established in this cause as $3,711.
For the reasons aforesaid, the writ of the applicants seeking to proceed in forma pauperis and to reduce appellate costs is granted and made peremptory. It is ordered that the clerk of court for Madison Parish compile and prepare the record on appeal in this cause and forward same to this court within twenty (20) days of the finality of this opinion and judgment. The matter will proceed further according to law.
WRIT GRANTED AND MADE PEREMPTORY.
SEXTON, Judge, dissenting in part and concurring in part.
I fully agree with the majority that an appeal may not be held hostage for the *508 payment of trial costs and that there are only certain limited costs which an appellant must post to take an appeal.
It is because of the view that these costs are limited that I do not agree with the treatment of the forma pauperis issue by the majority. I recognize that the jurisprudential rule that a forma pauperis motion must be filed within the appellate delays was formulated under a different appellate procedure and was in part jurisdictionally based. I further recognize that Bourque v. Singleton, 417 So.2d 77 (La.App. 3rd Cir.1982), (decided under the current procedure) did not consider that the appellate procedure had changed. Also, the forma pauperis motion in Bourque was substantially tardy.
However, even though the appellate procedure has changed, I see no reason to change the long-standing rule about when a forma pauperis motion for an appeal is timely. The appellants' attorney should know the financial condition of his client. LSA-C.C.P. Art. 2126 A specifies and limits appeal costs. An attorney should be able to estimate the actual appellate costs within a few dollars. (The Court of Appeal fee is pre-set, and a simple inquiry will reveal the reporter's standard per page cost for the transcript. Further, the clerk's fee for compilation of the record should be standard and nominal.)
The appellants' attorney, then, should be well aware within the delays for moving for an appeal whether a forma pauperis motion is necessary. There is no need to know the clerk's estimated costs in order to determine whether a forma pauperis petition is necessary.
Under the majority ruling, if an appellant takes an appeal on the last day and contests a $10 or $20 charge of the estimated costs, he can still proceed in forma pauperis. Thus, the appeal will be delayed by the contest over these costs which LSA-C.C.P. Art. 2126 contemplates. Additionally, there will be two delays for filing in forma pauperis on appeal, one if costs are contested and one if costs are not. For the reasons I have expressed, I see no reason for the distinction.
SEXTON, J., dissents and assigns written reasons.
NOTES
[1] This order references a January 29, 1988 judgment. The trial court's written reasons of April 5, 1988 (rendered on the clerk's motion) also references a January 29, 1988 judgment which rejected plaintiffs' demands. However, there is no such judgment in this record. The only judgment we find in the record that rejects the plaintiffs' demands is dated April 11, 1988.
[2] This order is found at the conclusion of the document entitled "Reasons for Judgment." There is no other judgment in the record with respect to the rule of the clerk.
[3] Plaintiffs likewise obtained a similar order on June 20, 1988. Apparently, one of the assignments of error in that appeal complains that the trial court sustained the defendant's rule to traverse the plaintiff's application to proceed to trial in forma pauperis.
[4] Apparently, plaintiffs have preserved the question of proceeding in forma pauperis at trial in the appeal itself which is not before us.
[5] The article was also amended in 1976 to reduce the delay period from ninety days to sixty days.
[6] A glance at the copy of the cost card furnished with the writ application does indicate some charges that appear to be outside the purview of LSA-R.S. 13:841. Moreover, we note that the total clerk's costs and the total sheriff's costs appear to substantially exceed the line item charges.
[7] The $2.00 a page is perhaps on the low side. The total of $3.00 a page is probably about average. Some clerks allow attorneys to make their own copies with their office copying machines to avoid the $.50 a page charge. However, the trial judge stated for the record that that practice was not allowed in Madison Parish.