## In re ADOPTION OF J— P— S— and M— E— S—.

A— B— and J— B—, Petitioners–Respondents,

v.

J— E— S—, Defendant–Appellant.

No. 18634.

Missouri Court of Appeals, Southern District, Division One.

April 14, 1994.

Motion for Rehearing or Transfer Denied May 6, 1994.

Application to Transfer Denied June 21, 1994.

James M. Kelly, Republic, for defendant-appellant.

Kent O. Hyde, William C. Love, Harrison, Tucker & Hyde, Springfield, for petitioners-respondents.

SHRUM, Judge.

The biological father, J__ E__ S__ (Appellant), appeals from a decree entered January 21, 1993, adjudging the adoption of his two children by A__ B__ and J__ B__ (Respondents), maternal grandparents of the children. Appellant challenges the validity of the adoption decree, saying that Respondents did not have nine months "lawful custody" of the children before the decree, without which the adoption could not be ordered. He also insists that the trial court erred in denying his motion to prosecute this appeal as a poor person.

We affirm.

## FACTS

J__ P__ S__ and M__ E__ S__ are the biological minor children of Appellant. The children's natural mother is dead because of Appellant's fatally shooting her on September 25, 1987, a crime to which he pled guilty on May 1, 1992.[1]

On February 10, 1988, Respondents filed a petition in the Circuit Court of Webster County, Probate Division (probate court), asking to be appointed guardians of J__ P__ S__ and M__ E__ E__. The probate court conducted a hearing on the guardianship petition on February 25, 1988. Appellant was present, appearing pro se. At the conclusion of the hearing the probate court appointed Respondents as guardians. It specifically found that Appellant was "unable to assume the duties of guardianship." [2] No appeal was taken by Appellant from the order granting letters of guardianship to Respondents.

On February 14, 1991, Respondents filed a petition to adopt the children and to terminate Appellant's parental rights. After Respondents amended their petition on August 20, 1992, the matter was tried January 8, 1993. The adoption court entered findings of fact and conclusions of law, terminated Appellant's parental rights to the children, and

---

1. For shooting his wife Appellant was sentenced to life imprisonment without possibility of probation or parole. He received two additional sentences of life imprisonment without probation or parole for killing two nephews on September 25, 1987.

2. The probate court also appointed Respondents as conservators of the estate of each child.

granted the requested adoptions. It found that on February 25, 1988, Respondents were "appointed guardians of the persons" of the children. Continuing, the adoption court concluded that (a) it had "jurisdiction over this proceeding as required by Chapter 453," (b) that § 475.120 provides "that guardians of a minor are entitled to the custody and control of the minor," and (c) "[t]hat the minor children have been in the lawful and actual custody of [Respondents] for a period of at least nine months prior to the entry of this Decree." It is from the judgment decreeing adoption that this appeal is taken.

## DISCUSSION AND DECISION

*Lawful Custody Issue*

■ In Missouri nine months actual and lawful custody of an adoptee is a jurisdictional prerequisite to the entry of a decree of adoption. § 453.080, RSMo 1986. *See In Re Novak,* 536 S.W.2d 33, 36 (Mo.banc 1976). With that as the cornerstone of his Point I, Appellant charges that the adoption court erred in decreeing adoption because the letters of guardianship found by the adoption court to be a "lawful custody order" were not "effective" to vest Respondents with lawful custody of the children.

Appellant's collateral attack upon the probate court's order rests exclusively upon the fact that the probate court did not give him 30 days in which to answer Respondents' petition for letters of guardianship. He relies upon the Uniform Child Custody Jurisdiction Act, as enacted in Missouri, §§ 452.-440 to 452.550, RSMo 1986 (hereafter, UCCJA). Specifically he points to § 452.-455.2, which says that "any parent whose parental rights have not been previously terminated ... must be served ... and may within thirty days after the date of service ... file a verified answer."[3]

Although Appellant voluntarily appeared at the guardianship hearing, did not then object to the shortened time, and did not appeal from the judgment of the probate court, he insists that the 30–day answer time afforded him by § 452.455.2 is a jurisdictional prerequisite without which the probate court could not adjudicate custody of the children, and, therefore, there was no lawful custody order upon which the adoption court could base its decree. We disagree.

Section 452.450, RSMo 1986, specifically sets forth the necessary requirements for subject matter jurisdiction under the UCCJA and describes when the courts of this state have subject matter jurisdiction to make a custody determination. *Patterson,* 652 S.W.2d at 257; *In re Marriage of Gohn,* 639 S.W.2d 413, 414 (Mo.App.1982). It is the only statute that specifies what is required to confer subject matter jurisdiction on the court in such cases, and the specifications do not include giving a litigant 30 days in which to file an answer. *See Higgins v. Karger,* 753 S.W.2d 622, 625–26 (Mo.App.1988) (citing *McCammon v. McCammon,* 680 S.W.2d 196, 200–201 (Mo.App.1984)). "Section 452.450 (the statute setting forth the conditions that must exist for a Missouri court to have jurisdiction to make a child custody determination) does not mention § 452.455 or any other statute, nor does it state, explicitly or implicitly, that any other requirements must be met in order to vest jurisdiction." *Higgins,* 753 S.W.2d at 626.

On the authority of *Higgins, McCammon, Gohn,* and *Patterson,* we hold that, under the UCCJA, subject matter jurisdiction is governed solely by § 452.450 and not by § 452.-455.2.

■ In contrast, the purpose of § 452.-455.2 is to insure that a litigant in a custody proceeding who is not before the court has reasonable notice and an opportunity to be heard before a decree is rendered.[4] Thus, a

3. *See In Re Estate of Patterson,* 652 S.W.2d 252, 254[2] (Mo.App.1983) (holding that the UCCJA applies to guardianship of the person proceedings).

4. The historical note to § 452.455 (*See* 24 V.A.M.S. 402 (West 1986)) directs attention to the Uniform Child Custody Jurisdiction Act § 4, as promulgated in 1968 by the National Confer-

ence of Commissioners on Uniform State Laws, Vol. 9 Part I *Uniform Laws Annotated* at 208 (West 1988), which provides in part:

"Before making a decree under this Act, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously

litigant who has not voluntarily submitted to the court's jurisdiction must be given 30 days in which to plead before a hearing can be held; a decree rendered without such notice and without the litigant's appearance is void. *In Re Cook,* 691 S.W.2d 243, 245[2] (Mo.banc 1985); *Patterson,* 652 S.W.2d at 256.

◼ A party may, however, waive a personal jurisdiction defense by voluntarily appearing without the service of any writ, or where the notice is short of that required by law or was defectively served *if* the party who so appears either fails then to raise his personal jurisdiction defense in a timely fashion or takes action that is wholly inconsistent with his assertion that the trial court is without personal jurisdiction. *Crouch v. Crouch,* 641 S.W.2d 86, 90–91 n. 4 (Mo.banc 1982); *State ex rel. Lindell Tower Apartments, Inc., v. Guise,* 357 Mo. 50, 206 S.W.2d 320, 323[4] (1947).

Missouri courts have applied this principle to § 452.455.2. In *Niederkorn v. Niederkorn,* 616 S.W.2d 529 (Mo.App.1981), a father complained that a trial court conducted a temporary custody hearing without affording him notice and opportunity to be heard in violation of § 452.455. The complaint was rejected.

> "We find husband's claims in connection with the UCCJA to be without merit. Husband's claim that he had no notice and opportunity to be heard is frivolous.... As noted earlier, he had ample opportunity to testify on the question of custody and to cross-examine wife ..., yet he did neither."

616 S.W.2d at 537[16].

To the same effect is *In Re B.R.F.,* 669 S.W.2d 240. There a father seeking custody of his daughter in a Missouri court via a habeas corpus action challenged a New Jersey custody order in favor of the maternal grandmother. He claimed that he was not given proper notice and the opportunity to be heard as required by New Jersey's version of the UCCJA. The Eastern District rejected the argument, saying:

> terminated, and any person who has physical custody of the child."

"Regardless of how the father learned of the New Jersey proceedings, he did, in fact, appear before that New Jersey Court in person and by counsel, without raising the issue of improper notice. *His appearance, thus, waived any objection to lack of notice, and the court properly had jurisdiction over his person.... [S]ee, e.g., Crouch v. Crouch,* 641 S.W.2d 86, 90 (Mo. banc 1982)."

669 S.W.2d at 248[9] (emphasis ours).

In *Miller v. Robinson,* 844 S.W.2d 574 (Mo.App.1992), a mother argued that because no summons was ever issued on her ex-husband's motion to transfer custody and because she did not have 30 days to answer before hearing, a trial court was without jurisdiction to order custody of her son to his father. The Western District rejected that argument, saying:

> "Miller relies on *In re Cook,* 691 S.W.2d 243 (Mo.banc 1985), in support of her argument. The *Cook* court noted that § 452.-455.2 grants a party at least 30 days to plead before a hearing can be held. The *Cook* court voided an order to modify because the petitioner did not receive 30 days. *Id.* at 244–45. Unlike Miller, however, the petitioner in *Cook* did not appear at the hearing, presented no evidence, and received no notice of the hearing.
>
> "Although a parent's voluntary appearance in a child custody case does not grant the court jurisdiction of the subject matter, *State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 279 (Mo.App.1987), it does establish the court's jurisdiction over the parent. *See In re B.R.F.,* 669 S.W.2d 240, 248 (Mo.App.1984). Miller received notice that the motion for contempt and motion for transfer of custody would be heard on April 19, 1991. She appeared in person on April 22, 1991, advised the court she wanted to proceed, and participated in the hearing."

844 S.W.2d at 578.

Appellant's argument that the 30–day answer period in § 452.455.2 is a requirement that cannot be waived by a litigant and is jurisdictional in the sense that the probate

*See also In Re B.R.F.,* 669 S.W.2d 240, 248 n. 16 (Mo.App.1984).

court could not adjudicate custody without the passage of that time is based upon four cases: *Patterson*, 652 S.W.2d 252; *Cook*, 691 S.W.2d 243; *In the Interest of D.L.D.*, 701 S.W.2d 152 (Mo.App.1985); and *In re M___*, 446 S.W.2d 508 (Mo.App.1969).

■ We conclude that Appellant's cases do not support his argument. Specifically, *Cook* and *Patterson* do not hold, either explicitly or implicitly, that the 30–day notice requirement is a jurisdictional requirement that cannot be waived. Rather they teach that a custody order is void when rendered without a litigant's appearance *and* without adhering to the notice requirements mandated by the legislature. *See, e.g., Miller*, 844 S.W.2d at 578.

As to *Interest of D.L.D.* and *In re M___*, juvenile code provisions were at issue in those cases, not the UCCJA.[5] In both cases a statutorily mandated "neglect hearing" was not conducted. Consequently, the juvenile courts were held to be without jurisdiction to later enter a judgment terminating parental rights until there had been a summons and hearing on the original neglect petition. Though the respective juvenile courts had jurisdiction over the subject matter and persons, they lacked jurisdiction in the sense that the juvenile code did not invest them with authority to enter a judgment terminating parental rights without the initial neglect hearing. *Interest of D.L.D.*, 701 S.W.2d at 159 [12,13]; *In re M___*, 446 S.W.2d at 508. Unlike *Interest of D.L.D.* and *In re M___*, a hearing was held here. Appellant appeared, and, as we further discuss, Appellant took part in the proceedings, thus clearly distinguishing this case from *Interest of D.L.D.* and *In re M___*.

■ Common law rules regarding general appearances apply in the probate division because it is exempt from Rule 55. *C & H Distributors, Inc. v. Cloud Enterprises, Inc.*, 866 S.W.2d 927, 928 (Mo.App.1993) (citing *Anderson v. Wittmeyer*, 834 S.W.2d 780, 784 (Mo.App.1992). "[I]f a party takes any action which recognizes that the cause is in

court and assumes an attitude that the jurisdiction of the court has been acquired, he is bound thereby and the action amounts to a general appearance." *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377, 384[5] (Mo. banc 1979). A party enters an appearance in an action by taking " 'any part in the action.' " *Adamson v. Harris*, 726 S.W.2d 475, 478[6] (Mo.App.1987) (quoting Restatement (Second) of Conflict of Laws § 33, Comment b (1971)).

Appellant was present throughout the guardianship hearing and the record shows that he was afforded a proper opportunity to be heard. "A meaningful opportunity necessarily includes the right to confront and cross-examine opposing witnesses and to rebut their testimony with controverting evidence." *In Re B.R.F.*, 669 S.W.2d at 248[10]. In open court, before and during the hearing, Appellant had opportunity to raise the issue of improper notice, yet he failed to do so. He also had ample opportunity to testify on the question of custody and guardianship and to cross-examine Respondents, yet he did neither.

By taking part in the guardianship proceedings, Appellant entered his appearance. *See Adamson*, 726 S.W.2d at 478[6]. By entering his appearance and participating in the guardianship hearing to its conclusion without raising the defense of lack of personal jurisdiction, Appellant waived that defense. *See Crouch*, 641 S.W.2d at 90–91, n. 4; *In re B.R.F.*, 669 S.W.2d at 248–49; *Niederkorn*, 616 S.W.2d at 537–38. The purpose of § 452.455.2 was served by Appellant's appearance as he subjected himself to the jurisdiction of the probate court and had the opportunity to protect his interest. *See Miller*, 844 S.W.2d at 578; *Anderson*, 834 S.W.2d at 784. Contrary to Appellant's argument, the letters of guardianship constituted a lawful custody order upon which the adoption court could base its decree. Point denied.

---

**5.** "[T]he statutes dealing with termination of parental rights are a code within themselves." *Interest of D.L.D.*, 701 S.W.2d at 158.

*Denial Of Request to Appeal As Poor Person*

After filing his notice of appeal, Appellant requested that the trial court allow him to proceed with his appeal as a poor person pursuant to § 514.040, RSMo 1986.[6] *See also* Rule 77.03.[7] He also filed affidavits in support of his motion. One affidavit recited that Appellant was in the penitentiary; that he was without employment, means of support, or property other than his personal belongings; and he could not pay the costs of appeal. The other affidavit said that money inherited by Appellant from his mother had been spent and that real estate inherited by Appellant had been placed in an irrevocable inter vivos trust for the benefit of his minor children. The single explanation of how the inherited cash was spent was that $11,698.97 went toward attorney fees.

Respondents objected to Appellant's request to proceed with the appeal as a poor person. They directed the trial court's attention to evidence at trial that Appellant inherited cash ($14,000 to $15,000) and real estate from his mother's estate. They further asserted that Appellant did earn some income while incarcerated.

On April 20, 1993, the trial court denied Appellant's motion without declaring whether or not Appellant was indigent.

Appellant now charges in Point II that the trial court erred in denying his motion without first determining whether he was indigent. He relies heavily upon *State ex rel. Coats v. Lewis,* 689 S.W.2d 800 (Mo.App. 1985), which explains that eligibility to proceed under § 514.040 is determined in a two-step inquiry. In the first stage of the inquiry the court must be convinced of the movant's indigence. 689 S.W.2d at 804[2]. Until the record reflects that an indigence determination was made, a trial court has not fully performed the duty imposed on it by § 514.-040. 689 S.W.2d at 807. It is only after the trial court makes that determination that its

discretionary discretion comes into play, and not before. *Id.* at 804.

After oral argument we ordered the trial court to place on record and file with this court a finding of whether Appellant was indigent, and we permitted the parties to file supplemental briefs regarding the trial court's finding on the indigence issue.

We received the trial court's finding on the indigence issue on January 25, 1994. In pertinent part it reads:

"The murders [of Appellant's wife and his two nephews] occurred on September 25, 1987. Subsequent to the murders [Appellant's] mother died. Her estate was probated in Christian County, Missouri. [Appellant] inherited the sum of $14,-987.37, in cash from his mother's estate. In addition, he also inherited a farm from that estate having a fair market value of at least $60,000.00. [Appellant] testified that the cash was used by him to pay attorney James Kelly's attorney's fees. He further testified that the farm he inherited from his mother's estate was placed in an irrevocable trust for the benefit of the minor children. [Appellant] is employed while incarcerated and earns the sum of $17.50 per month. The Court did not receive into evidence any proof as to the amount of Kelly's attorney's fees nor a copy of the trust agreement. The minor children, claimed beneficiaries of the trust, have received no income from the trust.

"The court concludes that while incarcerated for the murder of the mother of the minor children [Appellant] received $75,000.00 in cash and other property and has transferred the property in such a manner that it is not now available for [Appellant] to make use of for any purpose, including the pursuit of this appeal. The Court concludes that because of those transfers [Appellant] is not indigent within

---

6. In pertinent part § 514.040, RSMo 1986, reads: "If any court shall ... be satisfied that the plaintiff is a poor person, and unable to prosecute his or her suit, and pay the costs and expenses thereof, such court may, in its discretion, permit him or her to ... prosecute his or her action as a poor person, and thereupon such poor person shall have all necessary process and proceedings as in other cases...."

7. Rule 77.03 reads: "If the plaintiff is a poor person, the court may permit the plaintiff to commence and prosecute the civil action without making a cost deposit or furnishing security for costs."

the meaning of the Supreme Court Rule or the Statute."

By its ruling the trial court cured the error charged in Point II, and the question is now moot. We decline to consider Point II further because it presents no unsettled legal question of public interest and importance. *Kracman v. Ozark Elec. Co-op.*, 816 S.W.2d 688, 691[7] (Mo.App.1991).

■ Appellant filed a supplemental brief containing Point III in which he challenges the sufficiency of the evidence to support the trial court's finding that he was not indigent and its denial of his motion for leave to prosecute his appeal as a poor person. Although Appellant admits that he inherited money and real property through the death of his mother,[8] he points to his affidavits which say that he had spent or otherwise disposed of all inherited assets before he asked to proceed as a poor person. Because his affidavits are uncontradicted, Appellant argues that the record thus does not support the trial court's finding of non-indigence. Appellant implicitly says that the term "poor person" in § 514.040 includes those who voluntarily inflict upon themselves their destitute condition by giving away valuable assets after the litigation is in progress.

The issue raised by Point III is one of first impression in Missouri. Moreover, we find only minimal foreign case law or other authority that answer the question under facts similar to those that exist here. As we consider the issue, we keep the following principles in mind.

■ Section 514.040 is the current legislative version of a "long settled policy of our state with reference to opening our courts to those unable to pay, and placing the service of its officers at their disposal without fee or price." *State ex rel. La Rue v. Hitchcock*, 171 Mo.App. 109, 153 S.W. 546, 552 (1913). It is not, however, a policy that allows "just

anyone to sue as a poor person." *Coats*, 689 S.W.2d at 803–04. A litigant can proceed as a "poor person" only after the court is "satisfied" that he or she is "unable to prosecute his or her suit, and pay the costs and expenses thereof...." *Id.*

■ The privilege to litigate as a poor person should be "restricted to those who are clearly entitled to it so that the statute will not be abused, but a liberal construction should be applied in close or questionable cases to make sure that a litigant who is entitled to such privilege is not deprived of it." *Burks v. McKean*, 544 So.2d 502, 506 (La.App.1989). Trial courts are to take a realistic view of a litigant's actual ability to pay costs out of net income available for that purpose, after payment of reasonable living expenses and debts, and in view of unencumbered property. *Id.* Litigants should not be denied the right to an appeal although their inability to pay results from their past misconduct or improvidence. *Ranier v. Brown*, 623 S.W.2d 682, 686 (Tex.App.1981). "Nonetheless, a party who can secure the money from any legitimate source for the costs of appeal should not be allowed to proceed as an indigent." *Culpepper v. Coker*, 769 S.W.2d 373, 375[1] (Tex.App.1989). "[W]hen considering a person's ability to pay, the court may consider the size of the movants' estate and his or her net worth." *Minatoya v. Mousel*, 2 Haw.App. 1, 625 P.2d 378, 384[10] (1981). Although no hard and fast rule can be laid down applicable to all cases, the following offers guidance:

> "In passing on the ability to pay costs ... and the right of a party to be exempted therefrom, the court must look to the facts as a whole in the light of the objects intended to be accomplished. Obviously, if a laborer was barely earning the necessities of life for himself and family, ordinarily he should not be required to mortgage

8. The record does not show exactly when Appellant received the inherited money and property. The record does show that his mother was yet living on February 25, 1988, when the guardianship hearing was held. An affidavit filed March 16, 1993, on Appellant's behalf says that James Kelly had represented Appellant throughout the adoption proceeding and "in various other legal matters since May 11, 1991." According to the affidavit, Appellant has paid Kelly the sum of $11,698.97 for that representation. Finally, Respondents, in their written opposition to Appellant's motion, reminded the trial court that at the adoption trial Appellant "indicated that he inherited $14,000 to $15,000 from the estate of his mother which he had deposited with his attorney ... to pursue his representation in this adoption case."

his hand tools or household furniture to raise funds to pay the court costs. On the other hand, if a party ... is earning a substantial income, although he is expending it as rapidly as it comes in, or if he owns ... valuable property ... which he could mortgage or otherwise dispose of and thereby secure the necessary funds without depriving himself and his family of the necessities of life, he should be required to pay the costs...."

*Pinchback v. Hockless,* 139 Tex. 536, 164 S.W.2d 19, 20 (1942).

From these principles we conclude that the trial court did not err in its finding that Appellant was not indigent within the meaning of the § 514.040 or Rule 77.03. Appellant owned real estate valued at $60,000 that came to him as this litigation was in progress. This was "valuable property" which he could have mortgaged or otherwise disposed of for valuable consideration and thereby secured the necessary funds without depriving himself of the necessities of life. *See Pinchback,* 164 S.W.2d at 20. Rather than preserve his assets and make a proper effort to raise the necessary money to prosecute his appeal, Appellant transferred the real estate beyond his reach almost as soon as he received it.

 Appellant's voluntary transfer of real estate without consideration is analogous to a parent's voluntary efforts to reduce income or income producing ability in anticipation of child support orders. In such cases trial courts are "entirely justified" in imputing income or assets to the party who has disabled himself financially. *In re Marriage of Garrison,* 846 S.W.2d 771, 775 (Mo.App. 1993) (citing 1 Mo. Family Law, § 14.7 (MoBar 4th ed. 1988)). *See also Wynn v. Wynn,* 738 S.W.2d 915, 919–20 (Mo.App.1987); *Weston v. Weston,* 768 S.W.2d 588 (Mo.App. 1989).

Because Appellant received and transferred the real estate during the adoption litigation, the trial court was justified in imputing its value to Appellant. Under the circumstances, the trial court did not err in

finding that Appellant was not indigent. Point denied.

Judgment affirmed.

CROW and MONTGOMERY, JJ., concur.

PARRISH, C.J., recuses.